**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| URBAN GROUP EXERCISE CONSULTANTS, LTD. | |
| Plaintiff, | Civil Action No. 1:12-CV-3599 (RWS) |
| v. | |
| DICK'S SPORTING GOODS, INC., | |
| Defendant. | |

**DICK'S SPORTING GOODS, INC.'S MOTION AND MEMORANDUM OF LAW TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Michael A. Nicodema (MAN2949)
Greenberg Traurig, LLP
200 Park Avenue
Florham Park, NJ  07932
(973) 360-7900

Jeffrey P. Dunning
(*pro hac vice* application pending)
Mark R. Galis
(*pro hac vice* application pending)
Elysa Q. Wan
(*pro hac vice* application pending)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL  60601
(312) 456-8400

Attorneys for Defendant Dick's Sporting Goods, Inc.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  RELEVANT FACTUAL BACKGROUND.........................................................1

III. APPLICABLE LEGAL STANDARDS ...............................................................3

    A.  Relevant Pleading Requirements ...................................................................3

    B.  Trade Dress Infringement and Dilution ........................................................4

IV. PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
RELIEF MAY BE GRANTED ...........................................................................7

    A.  Plaintiff Has Not Clearly Identified the Alleged Trade Dress...........................7

    B.  Plaintiff Has Not Adequately Pled That the Alleged Trade Dress is Non-
Functional .....................................................................................................10

    C.  Plaintiff Has Not Adequately Pled That the Alleged Trade Dress Has Acquired
Distinctiveness or is Famous. .......................................................................12

V.  CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................... 4

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
   No. C 08-4397, 2008 WL 6742224 (N.D. Cal. Dec. 18, 2008) ............................. 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................... 3

*Burberry Ltd. v. Euro Moda, Inc.*,
   No. 08 Civ. 5781, 2009 WL 1675080 (S.D.N.Y. June 10, 2009)........................... 6

*D'Alessio v. New York Stock Exchange, Inc.*,
   258 F.3d 93 (2d Cir. 2001)............................................................................ 4

*DO Denim, LLC v. Fried Denim, Inc.*,
   634 F.Supp.2d 403 (S.D.N.Y 2009)................................................................ 11

*Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*,
   228 F.Supp.2d 399 (S.D.N.Y. 2002)................................................................ 6

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011)........................................................................... 4

*Heller Inc. v. Design Within Reach, Inc.*,
   No. 09 Civ. 1909, 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) ......................... 13

*Keep A Breast Foundation v. Seven Group*,
   No. 11-cv-00570, 2011 WL 3240756 (S.D.Cal. 2011)........................................ 9

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997)........................................................................... 5

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   454 F.3d 108 (2d Cir. 2006)........................................................................... 4

*Luv N' Care, Ltd. v. Regent Baby Products Corp.*,
   --- F.Supp.2d ----, 10 Civ. 9492, 2012 WL 78042 (S.D.N.Y. Jan. 11, 2012)........ 14

*Mead Data Central, Inc. v. Toyota Motor Sales U.S.A., Inc.*,
   875 F.2d 1026 (2d Cir. 1989).......................................................................... 7

*Nat'l Distillers Products Co., LLC v. Refreshment Brands, Inc.*,
   198 F.Supp.2d 474 (S.D.N.Y. 2002)................................................................ 6

*Nat'l Lighting Co., Inc. v. Bridge Metal Industries, LLC*,
   601 F.Supp.2d 556 (S.D.N.Y. 2009)......................................................... 5, 9, 10

*Sabert Corp. v. Ullman Co., Inc.*,
   No. 99 Civ. 5030, 1999 WL 1115048 (S.D.N.Y. Dec. 7, 1999)..........................11

*Savin Corp. v. Savin Group*,
   391 F.3d 439 (2d Cir. 2004)....................................................................................6

*Sherwood 48 Assoc. v. Sony Corp. of America*,
   76 Fed. Appx. 389 (2d Cir. 2003)...........................................................................9

*Sleep Science Partners v. Lieberman*,
   No. 09-04200, 2010 WL 1881770 (N.D.Cal. May 10, 2010)...................................9

*SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*,
   No. 06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) ...........................7

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
   25 F. Supp. 2d 154 (S.D.N.Y. 1998)......................................................................12

*TCPIP Holding Co. v. Haar Commc'n, Inc.*,
   244 F.3d 88 (2d Cir. 2001)......................................................................................6

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
   532 U.S. 23 (2001)...................................................................................................5

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000).................................................................................................4

*Yurman Design Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001)....................................................................................4

**Federal Statutes**

15 U.S.C. § 1125(a) .......................................................................................................2

15 U.S.C. § 1125(a)(3) .................................................................................................10

15 U.S.C. § 1125(c) ...................................................................................................2, 6

15 U.S.C. § 1125(c)(2)(A) .............................................................................................6

15 U.S.C. § 1125(c)(4)(A) ...........................................................................................10

**State Statutes**

New York Gen. Bus. Law § 360-l .................................................................................2

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 3, 4

## I.      **INTRODUCTION**

Plaintiff Urban Group Exercise Consultants, Ltd.'s ("Plaintiff") Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to (1) identify the specific elements which comprise its alleged trade dress; (2) allege specific facts which would support a finding that its alleged trade dress is non-functional; and (3) allege specific facts which would support a finding that its alleged trade dress has acquired secondary meaning or is famous under trademark law.

As discussed below, Plaintiff's Amended Complaint does not identify precisely what combination of elements of its "Urban Rebounder" product comprises the "overall design" of that product that Plaintiff seeks to protect as trade dress.  Rather, Plaintiff has described its alleged trade dress in such general terms that it is impossible to identify the specific trade dress for which Plaintiff seeks protection.  Nor does the Amended Complaint allege facts that would enable a trier of fact to find that the alleged trade dress is non-functional, distinctive or famous. Accordingly, Plaintiff's Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.     **RELEVANT FACTUAL BACKGROUND**

Plaintiff manufactures and distributes the "Urban Rebounder", a trampoline exercise device.  (Amended Complaint ¶¶ 8-9.)  Since 2008, Plaintiff has sold a version of the Urban Rebounder which features a red and black color scheme.  (Amended Complaint ¶¶ 17, 22.) Plaintiff does not own any trademark registrations which cover the design of the Urban Rebounder.  (Amended Complaint ¶ 44.)

Defendant Dick's Sporting Goods, Inc. ("DSG") is a well-known sporting goods retailer with over 450 stores nationwide.  From 2005 through 2011 DSG purchased the Urban Rebounder product from Plaintiff for sale in DSG's retail stores.  (Amended Complaint ¶¶ 12-

21.)  In approximately 2010, DSG also began selling a competing trampoline exercise device, the Fitness Gear Cardio Jump Trainer (hereinafter the "Jump Trainer").  (Id. ¶¶ 26-27.)  Numerous other companies sell similar trampoline exercise devices which compete with both the Urban Rebounder and Jump Trainer products.

On May 7, 2012, Plaintiff filed its Complaint asserting three counts against DSG, alleging that DSG's sale of the accused Jump Trainer product infringes Plaintiff's alleged unregistered trade dress in the Urban Rebounder product under 15 U.S.C. § 1125(a) and dilutes Plaintiff's registered trademark[1] under 15 U.S.C. § 1125(c) and New York Gen. Bus. Law § 360-l.  (Dkt. No. 1.)  Subsequently, on June 21, 2012, Plaintiff filed an Amended Complaint in which it revised its trademark dilution claims to allege that DSG's sale of the Jump Trainer product dilutes Plaintiff's unregistered trade dress, rather than its registered trademark.  (Dkt. No. 6.)

While the Amended Complaint purports to state claims for trade dress infringement and trade dress dilution, Plaintiff fails to articulate a clear and consistent definition of the alleged trade dress.  Rather, the Amended Complaint describes the trade dress in various vague and inconsistent ways, including the following (emphasis added):

- "A distinguishing feature of the Urban Rebounder sold to DSG after 2008 was ***the design of the jumping mat in black with a red outline, and a protective fold skirt surrounding the mat*** that included a logo design which bore Plaintiff's registered logo Trademark." (Id. ¶ 17.)

- "The ***distinguishing coloration in the product design*** of The Urban Rebounder has acquired distinctiveness through secondary meaning, in that ***the underlying black and red color scheme*** conveys to the minds of the public that its primary significance is to identify Plaintiff Urban Group, the source of The Urban Rebounder product."  (Id. ¶ 25.)

---

[1] Plaintiff alleges that it is the owner of U.S. Trademark Reg. No. 3062622 for the mark URBAN REBOUNDING, (Amended Complaint ¶ 13), and that DSG does not use that trademark on the accused Jump Trainer product.  (Amended Complaint ¶ 29.)

- "The display picture on both the packaging and on DSG's website depicts The Jump Trainer in the same exact ***black and red color scheme*** as that of the Urban Rebounder."  (Id. ¶ 28.)

- "The degree of similarity between The Jump Trainer and The Urban Rebounder is alarming, as demonstrated by the exact ***black and red color scheme and dimension size*** of both products."  (Id. ¶ 32.)

- "Defendant DSG intended to sell The Jump Trainer with the ***precise black and red color scheme and design*** as The Urban Rebounder."  (Id. ¶ 34.)

- "The Urban Rebounder's ***overall design with black and red color scheme*** has become so associated with [Plaintiff] in the mind of the public …" (Id. ¶ 42.)

- "[T]he Jump Trainer is identical to the Urban Rebounder's ***overall design and black and red color scheme***."  (Id. ¶ 43.)

- "DSG has diluted the Urban Rebounder's unregistered, non-functioning and famous ***overall design and coloration*** by tarnishment." (Id. ¶ 44.)

- "Because the Jump Trainer is sold with such glaring similarities to the Urban Rebounder, the ***overall design and black and red coloration*** of the Urban Rebounder may lose its ability to serve as a unique identifier of the product."  (Id. ¶ 45.)

- "Defendant DSG's use of Plaintiff's Urban Rebounder ***design and coloration*** . . . and the renown of the Urban Rebounder's ***unregistered design and black and red color scheme*** raise a strong likelihood of dilution by blurring."  (Id. ¶ 46.)

- "[T]he Urban Rebounder has achieved such distinctiveness by way of ***its overall design and its black and red coloration***."  (Id. ¶ 49.)

- "Because Defendant DSG sells the Jump Trainer, a product glaringly similar to the Urban Rebounder's ***aesthetic design and coloration*** but with much less quality and prestige, this conduct is likely to cause dilution…"  (Id. ¶ 50.)

## III.   **APPLICABLE LEGAL STANDARDS**

### A.   **Relevant Pleading Requirements**

A court must dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint is fatally flawed if it fails to give the defendant notice of a legally cognizable claim and the grounds on which it rests.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If the complaint does not contain factual matter sufficient

3

to "state a claim to relief that is plausible on its face" it must be dismissed under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a complaint must be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 99 (2d Cir. 2001).

When evaluating a complaint under Fed. R. Civ. P. 12(b)(6) the Court is not bound to accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. It is not enough to allege facts that merely raise the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not taken as true. *Id.* Claims containing only "conclusory, vague, or general allegations" cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).

## B.    Trade Dress Infringement and Dilution

A product's trade dress is defined as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006). Courts exercise "particular caution" in extending trade dress protection to product designs. *Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (citation omitted). Although the Lanham Act protects marks that consumers are likely to rely upon in distinguishing goods, "almost invariably, even the most unusual of product designs . . . is intended not to identify the source" of the product, "but to render the product itself more useful or more appealing. *Id.* at 114-15 (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000)). Further, granting trade dress protection to product designs raises a potent risk that relief will impermissibly afford a

level of "protection that would hamper efforts to market competitive goods" and "create a monopoly in the goods themselves." *Id.* at 115 (citation omitted).

A plaintiff asserting a claim of trade dress infringement in a product design must meet four pleading requirements: (1) a precise description of the character and scope of the alleged trade dress; (2) the alleged trade dress is non-functional; (3) the alleged trade dress has acquired secondary meaning; and (4) a likelihood of confusion between the alleged trade dress and the defendant's product. *Nat'l Lighting Co., Inc. v. Bridge Metal Industries, LLC*, 601 F.Supp.2d 556, 560-61 (S.D.N.Y. 2009) *Heptagon Creations, Ltd. v. Core Group Marketing LLC*, No. 11 Civ. 1794, 2011 WL 6600267, at *7 (S.D.N.Y. Dec. 22, 2011) (citations omitted). With regard to element (4), the plaintiff must articulate the specific elements that comprise the alleged trade dress. *Yurman Designs*, 262 F.3d at 117 (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381–82 (2d Cir. 1997)).

Sweeping or broad descriptions denoting a category of product features fail to adequately describe a product's trade dress. *Shevy Custom Wigs v. Aggie Wigs*, No. 06 Cv. 1657, 2006 WL 3335008, at *5 (E.D.N.Y. Nov.17, 2006). Similarly, laundry lists of design elements that fail to describe which of those elements are distinctive and how they are distinctive are likewise inadequate. *Nat'l Lighting*, 601 F.Supp.2d at 562.

Also, a plaintiff asserting trade dress in a product design must prove both that the alleged trade dress has acquired distinctiveness (or "secondary meaning") and that it is non-functional. *Yurman Design*, 262 F.3d at 115-16. A product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. *Id.* at 116 (citing *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001)). In cases involving an aesthetic feature, the trade dress is functional if the right to use it

exclusively would put competitors at "a significant non-reputation-related disadvantage." *Id.* The test of non-functionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition. *Id.*

In addition, a plaintiff asserting a trade dress dilution claim must plead facts which would support a finding that (1) the alleged trade dress is famous**,** (2) the defendant is making use of the trade dress in commerce, (3) the defendant's use of the trade dress began after the trade dress became famous, and (4) the defendant's use of the trade dress is likely to cause dilution. 15 U.S.C. § 1125(c); *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL 1675080, at * 10 (S.D.N.Y. June 10, 2009).

A "famous" mark or trade dress is defined as one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The plaintiff's mark must be "truly famous before a court will afford the owner of the mark the vast protections of the [federal law]." *Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir. 2004). Only marks approaching "household names" may qualify as "famous marks" under federal law. *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 228 F.Supp.2d 399, 412 (S.D.N.Y. 2002) (citations omitted). *See also Nat'l Distillers Products Co., LLC v. Refreshment Brands, Inc.*, 198 F.Supp.2d 474, 486 (S.D.N.Y. 2002) (noting that the FTDA is "only intended to protect truly famous marks, such as DUPONT, BUICK and KODAK") (citing *TCPIP Holding Co. v. Haar Commc'n, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001)).

Neither continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution. *SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*, No. 06 Civ. 1774, 2006

WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006).   Rather, plaintiffs must allege facts which would support a finding that their marks are sufficiently distinctive and famous in the eyes of the general public.  *Id.*

Further, while New York Gen. Bus. Law § 360-l does not include an express requirement that a plaintiff's mark or trade dress be "famous", courts in this district have concluded that the standards for establishing the distinctiveness required to show dilution under New York law closely resemble the standards for establishing fame under the Lanham Act.  *SMJ Group,* 2006 WL 2516519 at *3.  A trademark's distinctiveness in a limited commercial area does not endow it with a secondary meaning for the public generally that qualifies it for protection under § 360-l. *Id.* (citing *Mead Data Central, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989)).

## IV.   PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's Amended Complaint must be dismissed Plaintiff does not allege facts sufficient to support its claims for trade dress infringement and dilution.  Plaintiff has not (1) clearly defined the alleged trade dress; (2) pled facts sufficient to prove that the alleged trade dress is non-functional; or (3) pled facts sufficient to show that the alleged trade dress has acquired distinctiveness or fame.   Because Plaintiff fails to meet these crucial pleading requirements, Plaintiff's trade dress infringement and dilution claims fail to state a claim upon which relief may be granted, and must be dismissed under Fed. R. Civ. P. 12(b)(6).

### A.   Plaintiff Has Not Clearly Identified the Alleged Trade Dress

Plaintiff's Amended Complaint does not state a claim for trade dress infringement or dilution because Plaintiff has failed to clearly identify the elements which comprise the alleged trade dress.  A trade dress plaintiff must specifically identify the elements that make up its

alleged trade dress, and if it fails to do so, its trade dress claims must be dismissed. *Yurman Design Inc.*, 262 F.3d at 117-18.

As discussed in Sec. II, *supra*, nowhere in the Amended Complaint does Plaintiff precisely describe or identify the elements that make up the alleged trade dress, much less identify how any of those elements are distinctive. Instead, Plaintiff describes the alleged trade dress solely by way of vague references to the Urban Rebounder's "overall design" and "coloration". Specifically, at various points in the Complaint Plaintiff refers to the alleged trade dress as the "black and red color scheme" (Amended Complaint ¶¶ 25, 28, 42), "the black and red color scheme and design" (Amended Complaint ¶ 34), "distinguishing coloration in the product design" (Amended Complaint ¶ 25), "overall design with black and red color scheme" (Amended Complaint ¶ 42) and "overall design and black and red coloration" (Amended Complaint ¶ 44), among other descriptions.

Such vague statements do not describe the alleged trade dress with enough particularity to state a claim for trade dress infringement or dilution. As the Second Circuit has noted, a complaint must contain "a precise expression of the character and scope of the claimed trade dress." *Landscape Forms*, 113 F.3d at 381. Plaintiff cannot rely on general references to the product's design or color, without identifying the specific elements which comprise the alleged trade dress and describing how those elements are unique and distinctive in the marketplace. At various points Plaintiff refers to certain features such as a stabilizing bar, a support frame bar, a jumping mat, a protective fold skirt, and legs, without ever specifically defining which of those product features make up the alleged trade dress. As such, Plaintiff has failed to identify any unique combination of features which comprises its alleged trade dress. *Id*.

Courts routinely dismiss trade dress claims where the plaintiff has failed to precisely identify the elements which make up the alleged trade dress.  For example, in *Nat'l Lighting Co.*, the court dismissed the plaintiff's trade dress infringement claim, on the basis that its description of the alleged trade dress was merely a "laundry list of elements that constitute a [product's] design rather than a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive."  601 F.Supp.2d at 562.  That court further noted that a conclusory reference to the "entire look of the product" does not fulfill the plaintiff's obligation to offer "a precise expression of the character and scope of the claimed trade dress."  *Id.*

Similarly, in *Shevy Custom Wigs*, the court dismissed the plaintiff's trade dress infringement claim on the basis that the plaintiff's sweeping descriptions of alleged "distinctive features" comprising its trade dress were legally insufficient.  2006 WL 335008, at *4-5.  Again, that court found that simply reciting a list of features comprising the alleged trade dress was legally insufficient where the plaintiff failed to identify how any of those features were distinctive.  *Id.  See also Sherwood 48 Assoc. v. Sony Corp. of America*, 76 Fed. Appx. 389, 391 (2d Cir. 2003) (plaintiff's failure to identify the specific elements that comprise the alleged trade dress fatal to its trade dress infringement claim); *Keep A Breast Foundation v. Seven Group*, No. 11-cv-00570, 2011 WL 3240756, at *2 (S.D.Cal. 2011) (dismissing infringement claim where plaintiff described alleged trade dress as the "overall look and feel" of its products but failed to describe, or even list, the elements that compose the "overall look and feel" of its products); *Sleep Science Partners v. Lieberman*, No. 09-04200, 2010 WL 1881770, at *3-4 (N.D.Cal. May 10, 2010) (dismissing infringement claim where plaintiff failed to articulate which of several components of its website constituted the alleged trade dress); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. C 08-4397, 2008 WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008)

(dismissing infringement claim where the plaintiff claimed trade dress rights in the total image of a product, including an "orange frame" on the product packaging, but did not specify which elements were "part of the total image").

Here, Plaintiff's description of its alleged trade dress by reference to the "overall design and coloration" of the Urban Rebounder product, without any explication of the specific elements that comprise the trade dress, is woefully insufficient. Indeed, Plaintiff's description of its alleged trade dress is far less specific than the descriptions that were found inadequate in *Nat'l Lighting Co.* and *Shevy Custom Wigs*, inasmuch as the plaintiffs in those cases at least attempted to identify particular elements which comprised the alleged trade dress (albeit without explaining how those elements were distinctive). Here, Plaintiff simply uses sweeping descriptions such as the "overall design and coloration" of its Urban Rebounder product.

Accordingly, Plaintiff's trade dress claims must be dismissed because Plaintiff has failed to even specify which elements of the "overall design" of the Urban Rebounder comprise the alleged trade dress, much less identify how the alleged trade dress is unique or distinctive.

**B.     Plaintiff Has Not Adequately Pled That the Alleged Trade Dress is Non-Functional**

Additionally, Plaintiff's claims must be dismissed because Plaintiff has not adequately pled that its alleged trade dress is non-functional. To state a claim for trade dress infringement or trade dress dilution under the Lanham Act, Plaintiff must prove that the alleged trade dress is non-functional. *Yurman Design*, 262 F.3d at 115-16.[2]  Conclusory assertions that a product

---

[2] *See also* 15 U.S.C. §1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); 15 U.S.C. § 1125(c)(4)(A) ("In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the claimed trade dress, taken as a whole, is not functional and is famous.").

design is non-functional are insufficient to meet the plaintiff's burden.  *DO Denim, LLC v. Fried Denim, Inc.*, 634 F.Supp.2d 403, 408 (S.D.N.Y 2009).

Here, the only reference in the Amended Complaint to non-functionality is a single, conclusory reference to the "Urban Rebounder's unregistered, ***non-functioning*** and famous overall design."  (Amended Complaint ¶ 44, emphasis added.)  Plaintiff does not allege any facts that would support a finding that the "overall design and coloration" of the Urban Rebounder is not functional.  That failure is particularly acute here, because Plaintiff cannot seriously dispute that the use of features such as a jumping mat and a protective skirt in a trampoline exercise device is functional.  *See TrafFix*, 532 U.S. at 32 (noting that a product feature is functional if it is "essential to the use or purpose of the article").  Further, the use of particular colors may be deemed aesthetically functional and not entitled to trade dress protection.  *See, e.g., Sabert Corp. v. Ullman Co., Inc.*, No. 99 Civ. 5030, 1999 WL 1115048, *3-4 (S.D.N.Y. Dec. 7, 1999) (use of silver and gold color on disposable serving trays and platters was functional).

This case demonstrates exactly why courts "exercise particular caution when extending protection to product designs."  *Yurman Design*, 262 F.3d, at 114.  As the Second Circuit has noted, "even the most unusual of product designs – such as a cocktail shaker shaped like a penguin – is intended not to identify the source of the product, but to render the product itself more useful or more appealing." *Id*. at 114-115.

Here, Plaintiff has not alleged any facts which would support a finding that any aspect of the Urban Rebounder's "overall design and coloration" serves to identify the source of the product rather than to render the product more useful or appealing.  Accordingly, Plaintiff's trade dress infringement and dilution claims must be dismissed for failure to state a claim.  *See Heptagon Creations*, 2011 WL 6600267 at *7 (dismissing trade dress infringement claim where

plaintiff alleged no facts demonstrating that any aspect of the alleged trade dress existed for the sole purpose of identifying the plaintiff as the source of the products, as opposed to aesthetic or functional purposes); *DO Denim*, 634 F.Supp.2d at 408 (finding plaintiff's conclusory assertion that its alleged trade dress was "unique and non-functional" insufficient to satisfy non-functionality element of trade dress infringement and dilution claims).

### C.   Plaintiff Has Not Adequately Pled That the Alleged Trade Dress Has Acquired Distinctiveness or is Famous.

Plaintiff has not pled sufficient facts to support a finding that the alleged trade dress has acquired distinctiveness, much less that the alleged trade dress has become famous.  The law is clear that a product design cannot be inherently distinctive, so a plaintiff must plead facts which could support a finding that the alleged trade dress has acquired distinctiveness or secondary meaning.  *Yurman Design*, 262 F.3d at 115.  A determination of whether a trade dress has acquired secondary meaning involves consideration of a number of factors, including (1) plaintiff's advertising expenditures; (2) consumer surveys linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the trade dress; and (6) the length and exclusivity of the use. *Heptagon Creations*, 2011 WL 6600267, at *8 (citing *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F.Supp.2d 154, 164 (S.D.N.Y. 1998)).

Here, Plaintiff has not alleged sufficient facts to support a finding that the alleged trade dress has acquired distinctiveness.  Specifically, Plaintiff has not pled any facts which would support a finding that the public associates the alleged trade dress with Plaintiff, such as expenditures for advertising featuring the alleged trade dress, consumer surveys linking the alleged trade dress to a single source, or the length and exclusivity of Plaintiff's use of the alleged trade dress.  Instead, Plaintiff relies on conclusory allegations such as "[t]he Urban

Rebounder has acquired distinctiveness through secondary meaning" (Amended Complaint ¶ 25), which are insufficient to state a claim.

While Plaintiff vaguely refers to sales of "millions of units" since 2000 and its product being "featured" on a handful of television shows (Amended Complaint ¶ 10), it notably fails to allege how such sales and publicity have caused consumers to associate the alleged trade dress with Plaintiff.  Moreover, Plaintiff fails to identify how many of the purported "millions of units" sold since 2000 or the products "featured" on television utilized the alleged trade dress.[3]  Thus, Plaintiff has failed to allege sufficient facts to support a finding that its alleged trade dress has acquired secondary meaning.  *See Heptagon Creations,* 2011 WL 6600267 at *8 (plaintiff failed to allege that its trade dress had acquired distinctiveness because, while it alleged that its products had been featured in magazines, it did not include any allegations relating to "advertising expenditures or consumer surveys linking the [alleged trade dress] to a particular source").

Moreover, since Plaintiff has not adequately alleged facts to support a finding of secondary meaning, Plaintiff does not even come close to pleading facts which would support a finding that the alleged trade dress qualifies as famous, as required for a trade dress dilution claim.  *See Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909, 2009 WL 2486054, at *4 (S.D.N.Y. Aug. 14, 2009) (noting that under *Twombly*, a dilution plaintiff must "plead enough facts to show that its dilution claim is facially plausible").  Here, Plaintiff has not pled any facts which would support a finding that its alleged trade dress is famous.  Plaintiff does not point to any surveys or other evidence that a fact finder could rely on to find that the alleged trade dress

---

[3] Notably, Plaintiff alleges only that the Urban Rebounder featuring the red and black color scheme (which appears to comprise at least part of the alleged trade dress) has been sold since 2008. (Amended Complaint, ¶ 17, 22.)  While not expressly alleged in the Amended Complaint, Plaintiff used a blue and gold color scheme for its Urban Rebounder product prior to 2008.

is "widely recognized by the general consuming public of the United States".  *See id.* at *4 (dismissing dilution claim where plaintiff did not plead any factual allegations that would make a claim of fame plausible, such as facts about its advertising budget or the strength of its consumer recognition in the general population); *SMJ Group*, 2006 WL 2516519 at *4 (plaintiff's allegations regarding continuity of use, level of sales, or association did not establish the requisite level of distinctiveness among the general public required to support a dilution claim under federal or New York law).

Moreover, while Plaintiff's Amended Complaint includes a conclusory reference to the "Urban Rebounder's . . . famous overall design" (Amended Complaint ¶ 44), such a conclusory statement is legally insufficient to establish that the alleged trade dress qualifies as famous.  *See Luv N' Care, Ltd. v. Regent Baby Products Corp.*, --- F.Supp.2d ----, 10 Civ. 9492, 2012 WL 78042, at *4 (S.D.N.Y. Jan. 11, 2012) (conclusory allegations that alleged trademarks and trade dress were "widely known throughout the United States and worldwide" and "famous" lacked any factual reference to the trademarks and trade dress in suit, and were thus inadequate to plead the requirement of fame).

In addition, Plaintiff has failed to satisfy the separate pleading requirement that the alleged trade dress acquired fame before DSG began selling the accused Jump Trainer product. Thus, in view of the above, Plaintiff's dilution claims must be dismissed for failure to state a claim.

V.      **CONCLUSION**

For the reasons set forth above, DSG respectfully requests that this Court dismiss Plaintiff's Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted

Dated:  July 6, 2012                         _/s/ Michael A. Nicodema_
                                             Michael A. Nicodema (MAN2949)
                                             Greenberg Traurig, LLP
                                             200 Park Avenue
                                             Florham Park, NJ  07932
                                             (973) 360-7900

                                             Jeffrey P. Dunning
                                             (*pro hac vice* application pending)
                                             Mark R. Galis
                                             (*pro hac vice* application pending)
                                             Elysa Q. Wan
                                             (*pro hac vice* application pending)
                                             Greenberg Traurig, LLP
                                             77 West Wacker Drive, Suite 3100
                                             Chicago, IL  60601
                                             (312) 456-8400

                                             *Attorneys for Defendant Dick's Sporting Goods, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing DICK'S SPORTING GOODS, INC.'S MOTION AND MEMORANDUM OF LAW TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.


Dated:  July 6, 2012                    */s/ Michael A. Nicodema*

1