**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**          INDEX NO. 12-CIV-3599 (RWS)
------------------------------------------------------------X
Urban Group Exercise Consultants, Ltd.
                                                            :
              Plaintiff,

       v.                                                   :

Dick's Sporting Goods, Inc.,                                :

              Defendant.                                    :
------------------------------------------------------------X

**Plaintiff's Memorandum of Law**

**In Opposition to**

**Defendant's Motion to Dismiss**

                                            Respectfully submitted by:

                                            **BRUCE COLFIN LAW, P.C.**
                                            Bruce E. Colfin (BEC 5815)
                                            1178 Broadway, Suite 312
                                            New York, NY 10001
                                            (212) 691-5630
                                            Attorneys for Plaintiff

# INDEX

**CASES**                                                                                                   **PAGE**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct (1955)……………………… 4

*Chambers v. Time Warner, Inc.*, 282 F.3d 147,152 (2d Cir. 2002)………………………… 4

*Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 297 (3d Cir.)…………….. 8

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851, n. 11,
102 S.Ct. 2182 (1982)…………………………………………………………………………. 5

*Ives Laboratories, Inc. v. Darby Drug Co., Inc.,* 601 F.2d 631, 643 (C.A.N.Y., 1979)……. 6, 7

*LeSportsac, Inc., v. K Mart Corp.*, 754 F.2d 71, 75 (C.A.N.Y., 1985)……………………... 6, 7

*Merchants & Evans, Inc. v. Roosevelt Bldg. Prods. Co.,* 963 F.2d 628, 633 (3d Cir. 1992).. 6

*Oliveria v. Frito-Lay, Inc.*, 251 F.3d 56, 63-64 (2d. Cir. 2001)…………………………….. 4

*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)………………………………………… 4

*SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*, No. 06 Civ. 1774,
2006 WL 2516519 at 3 (S.D.N.Y., 2006)…………………………………………………… 8, 9

*Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 508 (2002)……………………………………. 4

*Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 788 (2d Cir. 2002)………………………. 5

*Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 765, 112 S.Ct. 2753 (1992)…………. 5

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 120 S.Ct. 1339, 1343 (2000)…. 5

*Warner Bros., Inc. v. Gay Toys, Inc. (Warner II),* 724 F.2d 327, 330 (2d Cir. 1983)………. 6

Plaintiff Urban Group Exercise Consultants, Ltd. ("Urban Group" or "Plaintiff") submits this Memorandum of Law pursuant to Local Rule 7.1(a), as well as the annexed Affirmation of Bruce E. Colfin, in opposition to Defendant's motion to dismiss the Complaint pursuant to F.R.C.P. 12(b)(6).

## I.  PRELIMINARY STATEMENT

Defendant Dick's Sporting Goods, Inc. ("DSG" or "Defendant") moves for dismissal, alleging a failure to state a claim upon which relief may be granted under Rule 12(b)(6).

Plaintiff has plead all causes of action in its Complaint with particularity, and goes beyond that required of the liberal standards of Rule 8, making dismissal on Rule 12(b)(6) grounds inappropriate.

For the reasons set forth below, it is respectfully requested that Defendant's motion be dismissed in its entirety.

## II.  FACTUAL BACKGROUND

The relevant facts to this action are detailed in the accompanying Affirmation In Opposition to Defendant's Motion to Dismiss ("Affirmation In Opposition"). In light of the Court's preference to brevity, these facts will be incorporated by reference from the Affirmation In Opposition, and this Memorandum will be limited to a discussion of legal principles relevant to the claims set forth in the Complaint.

## III.  STANDARDS OF PLEADING AND REVIEW

### A.  Standard of Pleading

Fed. R. of Civ. Proc. Rule 8 merely requires a short and plain statement of claims to show a Plaintiff's entitlement to relief. Plaintiff's Complaint fully complies with these general requirements, as a complaint need not allege specific facts to set forth a prima facie case.

3

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).  Conclusory allegations are sufficient. *Swierkkewicz, 534 U.S. at 514, 515.*

As is the Second Circuit's long standing interpretation, the pleading standard strongly favors all Plaintiffs, and reserves dismissal for any failure to comply with Rule 8 only in those cases where "the Complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

**B.     Standard of Review**

In determining a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true, and must construe and draw all reasonable inferences in a most favorable light to Plaintiffs.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Only those Complaints, which on their face show a bar to relief, may be dismissed under Rule 12(b)(6).  *Oliveria v. Frito-Lay, Inc.*, 251 F.3d 56, 63-64 (2d. Cir. 2001). While a Complaint attacked by a Rule 12(b)(6) need not be detailed with factual allegations, such allegations must be enough to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct (1955). However, a well-pleaded complaint may proceed even if it strikes a "savvy" judge that actual proof of those facts are improbable, and "that a recovery is very remote and unlikely." *Bell Atlantic Corp*., 550 U.S. 544 at 557.

Ultimately, it is the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Id* at 561.  As such, a Rule 12(b)(6) dismissal is unwarranted even if the Court is of the opinion that Plaintiffs are unlikely to prevail on the Merits.  *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 788 (2d Cir. 2002).

4

## IV.   RELEVANT LEGAL STANDARDS

### A.   Trade Dress Infringement

Trade dress is defined as the total image or overall design or appearance of a product or its packaging. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 765, 112 S.Ct. 2753 (1992). It may include features such as size, shape, color, color combinations, texture and graphics. *Two Pesos*, 505 U.S. 763 at 765.  To establish a cause of action for trade dress infringement under the Lanham Act, a plaintiff must show that: (**a**) the design is inherently distinctive or distinctive by virtue of having acquired secondary meaning; (**b**) the design is non-functional; and (**c**) there is a likelihood of confusion. *Two Pesos*, 505 U.S. 763 at 770.

#### i.   Distinctiveness

Although nothing in § 43(a) of the Lanham Act explicitly requires a producer to show that its trade dress is distinctive, courts have universally imposed that requirement, since without distinctiveness the trade dress would not "cause confusion ... as to the origin, sponsorship, or approval of [the] goods," as § 43(a) requires. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 120 S.Ct. 1339, 1343 (2000).  Product design, like color, is not inherently distinctive, and thus is entitled to protection under the Lanham Act as unregistered trade dress only upon showing that it has acquired secondary meaning. *Wal-Mart Stores, Inc.,* 529 U.S. 205 at 216. "Secondary meaning" occurs when, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851, n. 11, 102 S.Ct. 2182 (1982).

As more detailed in the Affirmation In Opposition, the Urban Rebounder's distinguished black jumping mat, a red outline surrounding the mat, and the product's protective fold skirt bearing Plaintiff's registered trademark, "Urban Rebounding," have acquired distinctiveness

through secondary meaning, since this core black and red overall design has been applied to the millions of every Urban Rebounder sold since 2008. Thus, it expresses to customers that its primary significance is to identify Plaintiff Urban Group, the source of the Urban Rebounder.

### ii.     **Non-Functionality**

"Functionality" arises in a product's features those that are essential to a it's use, as opposed to those which merely identify it, and are not protected under § 43(a). <u>Warner Bros., Inc. v. Gay Toys, Inc. (Warner II)</u>, 724 F.2d 327, 330 (2d Cir.1983).

If a particular feature is integral to the product's commercial success, the interest in free competition permits its imitation in the absence of a patent or copyright. <u>Ives Laboratories, Inc. v. Darby Drug Co., Inc.</u>, 601 F.2d 631, 643 (C.A.N.Y., 1979). However, where the feature or, more aptly, design, is a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. <u>Ives Laboratories, Inc.</u>, 601 F.2d 631 at 643. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection. <u>Id.</u> at 643.

Nonetheless, the circuit courts have differed as to whether a plaintiff has the burden of proving nonfunctionality in order to obtain § 43(a) relief, or whether a defendant must prove functionality as a defense. <u>LeSportsac, Inc., v. K Mart Corp.</u>, 754 F.2d 71, 75 (C.A.N.Y., 1985).

The court in *Merchants & Evans, Inc.* in the Third Circuit found that the party asserting non-functionality has the burden of proving so. <u>Merchants & Evans, Inc. v. Roosevelt Bldg. Prods. Co.,</u> 963 F.2d 628, 633 (3d Cir.1992). In contrast, the Second Circuit court in *Ives Laboratories, Inc.* finding that a "case for functionality…depends on the evidence proffered by Defendants.." <u>Ives Laboratories, Inc.,</u> 601 F.2d 631 at 643. As also supported by the court in

*LeSportsac, Inc.*, the question of functionality is characterized as a defense, and the burden falls on the defendant to prove functionality. *LeSportsac, Inc. v. K mart Corp.,* 754 F.2d 71 at 76.

The court in *LeSportsac, Inc.* reasoned that requiring the plaintiff to prove non-functionality in order to prevail might "defeat the Lanham Act's purpose of enabling a purchaser to distinguish one product from another, because a plaintiff unable to prove that the features copied are non-functional will not prevail, no matter how compelling the evidence that purchasers are confused as to product source." *Id.* at 76.

Applied to this Second Circuit court matter, Plaintiff is not deficient in its pleadings with regards to functionality, as the burden is imposed on Defendant to demonstrate functionality in Plaintiff's protectable trade dress.

    **iii.**    **Likelihood of Confusion**

Courts have applied traditional trademark analyses in evaluating the issue of likelihood of confusion in trade dress cases, as an analysis of likelihood of confusion requires a court to evaluate a number of factors including: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's marks; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) evidence of actual confusion; (7) whether the goods, though not in competition, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the party's sale efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might

7

expect the owner to manufacture a product in the defendant's market. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 297 (3d Cir.).

As further detailed in the accompanying Affirmation In Opposition, The Jump Trainer was intentionally portrayed, on its packaging and on Defendant DSG's website, as a mirror image to the black and red coloration of the Urban Rebounder's outlined jumping mat and surrounding protective fold skirt (sans Plaintiff's registered Trademark).  This, coupled with the Jump Trainer's below average customer reviews regarding its difficulty in being unfolded, its immediate retail after DSG's waning retail of the Urban Rebounder, and the shared marketing channels and target customer base of both products, collectively amount to a likelihood of customer confusion as to the origin, sponsorship and overall quality and durability of the Urban Rebounder.

**B.** **Trade Dress Dilution**

A claim for unregistered trade dress dilution requires that: (a) the claimed trade dress, taken as a whole, is not functional and is famous; and (b) if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.  *15 U.S.C. § 1125(c)(4)*.

"Famous" trade dress is defined as one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *15 U.S.C. § 1125(c)(2)(A)*.

Further, although New York Gen. Bus. Law § 360-l does not include an express requirement that a plaintiff's mark or trade dress be "famous," courts in this district have concluded that the standards for establishing the distinctiveness required to show dilution under New York law closely resemble the standards for establishing fame under the Lanham Act. *SMJ*

*Group, Inc. v. 417 Lafayette Restaurant LLC*, No. 06 Civ. 1774, 2006 WL 2516519 at *3 (S.D.N.Y., 2006).

As further articulated in the Affirmation In Opposition, The Urban Rebounder has sold millions of units since it was originally introduced in 2000, has been seen on several notable nationally televised programming, and sits in over 5,000 gyms worldwide throughout 18 countries. Consumer Products also named the Urban Rebounder in 2008 amongst the top 100 fitness products in the United States. Collectively, the Urban Rebounder's trade dress black jumping mat, red outline and protective folding skirt have become so associated with Plaintiff Urban Group in the mind of the public that, separately and aside from Plaintiff's registered "Urban Rebounding" trademark, this trade dress has famously become a source identifier of the Urban Rebounder distinguishable from other trampling devices.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss should be denied in its entirety, as all claims for trade dress infringement and trade dress dilution set forth in the Complaint warrant relief to be granted by the Court.

If the Court deems that any part of Defendant's Motion to Dismiss has merit, Plaintiff respectfully request that any such order of dismissal be without prejudice and with leave to amend under Rule 15(a).

Dated: July 18, 2012
       New York, NY

Respectfully Submitted:

Bruce E. Colfin (BEC 5815)
Bruce Colfin Law, P.C.
*Attorneys for Plaintiff*
1178 Broadway, Suite 312
New York, NY 10001
212-691-5630
Bruce@thefirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18 day of July 2012, the foregoing document is being served on counsel of record listed on the below Service List via the case Management/ Electronic Case Filing ( CM/ECM) and *electronic mail* .

Bruce E. Colfin
BEC 5815
Attorney for Plaintiff

**SERVICE LIST**

Michael A Nicodema ( MAN 2949)
Greenberg Traurig LLP
Attorneys for Defendant
200 Park Avenue
Florham Park, NJ 07932
nicodemam@gtlaw.com
973 360 7900