UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

URBAN GROUP EXERCISE CONSULTANTS,
LTD.,

                             Plaintiff,          12 Civ. 3599(RWS)

    -against-                        OPINION

DICK'S SPORTING GOODS, INC.,

                             Defendant.

------------------------------------X

A P P E A R A N C E S:

        <u>Attorney for Plaintiff</u>

        JACOBSON & COLFIN, P.C.
        60 Madison Avenue, Suite 1026
        New York, NY  10010
        By:  Bruce El Colfin, Esq.

        <u>Attorney for Defendant</u>

        GREENBERG TRAURIG, LLP
        200 Park Avenue
        New York, NY  10166
        By:  Michael A. Nicodema, Esq.

        77 West Wacker Drive, Suite 3100
        Chicago, IL  60601
        By:  Elysa Q. Wan, Esq.
            Jeffrey P. Dunning, Esq.
            Mark R. Galis, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/12

**Sweet, D.J.**

Defendant Dick's Sporting Goods, Inc. ("DSG" or the "Defendant") has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint (the "Amended Complaint") of Plaintiff Urban Group Exercise Consultants, Ltd. ("Urban Group" or the "Plaintiff").  Based upon the conclusions set forth below, Defendant's motion to dismiss the Amended Complaint's two federal causes of action is granted, and supplemental jurisdiction over Plaintiff's state law claim is declined.

**Prior Proceedings**

On May 7, 2012, Plaintiff filed its initial complaint against Defendant alleging trade dress infringement and dilution.  On June 21, 2012, Plaintiff filed the Amended Complaint, again alleging trade dress infringement and dilution. On July 6, Defendant filed its motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).  The motion was marked fully submitted on July 27, 2012.

**The Amended Complaint**

1

The Amended Complaint alleges the following facts, which are accepted as true at this stage of the litigation. J.B. Berns ("Berns"), Chairman and CEO of Urban Group, designed and developed the low-impact Urban Rebounder exerciser system (the "Urban Rebounder"). The Urban Rebounder is a trampoline-type device comprised of a stabilizing bar, a support frame bar, locking pins, a jumping mat, a protective fold skirt, springs and legs to support the device. Millions of these devices have been sold at a retail price of $99.95, and the device has been featured on the Today Show, The View, CNN, Lifetime and Headline News. The Urban Rebounder is now in over 5,000 gyms worldwide and in 18 different countries.

In or around 2005, Plaintiff began selling the Urban Rebounder to Defendant through a vending relationship with an intermediary named Amazing Goods, LLC. Through this agreement, Defendant would sell the Urban Rebounder to consumers. The Urban Rebounder contains a logo with the word mark "Urban Rebounding," which was registered with the United States Patent and Trademark Office ("USPTO") on February 28, 2006 as Registration # 3062622. From 2005 through 2007, Defendant purchased approximately 10,000 units of the Urban Rebounder

2

annually at $57 per unit.  All units of the Urban Rebounder

purchased by Defendant in this vending relationship bore

Plaintiff's registered trademark phrase "Urban Rebounding."

In 2008, Plaintiff entered into a vending relationship

directly with Defendant for the Urban Rebounder.  A

distinguishing feature of the Urban Rebounder sold to Defendant

after 2008 was the design of the jumping mat in black with a red

outline and a protective fold skirt surrounding the mat that

included a logo design which bore Plaintiff's registered

trademark.  In 2008, Defendant purchased approximately 5,900

units of the Urban Rebounder; in 2009, Defendant purchased 7,054

units; in 2010, Defendant purchased 3,555 units; and in 2011,

Defendant ordered 21 units.  Starting in 2008, the Urban

Rebounder with the black and red coloration at issue was named

by Consumer Products among the top 100 fitness products in the

United States.  Through Plaintiff's advertising, the Urban

Rebounder's design has become closely associated with Plaintiff,

and the design is a means by which to distinguish the Urban

Rebounder from other trampoling devices.

In or around 2010, Defendant entered into a vendor

agreement with Impex to sell the Fitness Gear Cardio Jump

3

Trainer (the "Jump Trainer") in its retail stores.  Defendant's

vendor deal amounts to approximately 10,000 units with the cost

per unit approximately $30-35.  The Jump Trainer is sold at a

resale price of $79.99, and it is advertised on Defendant's

store website as a 20% discount from $99.99, the same retail

price of the Urban Rebounder.  The display picture on both the

packaging and on Defendant's website depicts the Jump Trainer in

the same exact black and red color scheme as the Urban

Rebounder.  The only readily identifiable difference between the

products is that Urban Rebounder's logo, consisting of

Plaintiff's registered trademark, is missing from the Jump

Trainer and its packaging.  The Jump Trainer has received

significantly less favorable customer reviews on Defendant's

website, Dickssportinggoods.com.  The Jump Trainer's below

average customer reviews stem from the fact that customers have

difficulty unfolding the device without another person's

assistance, thereby creating inconvenience for the buyer.


Defendant has sold the Jump Trainer since 2010,

immediately following its sale of the Urban Rebounder.  The

proximity between Defendant's sale of the Urban Rebounder and

the Jump Trainer along with the products' matching color scheme

is alleged to have created customer confusion as to the

4

expectations of the Urban Rebounder's quality and durability.
The Jump Trainer is marketed through the same channels of trade
as the Urban Rebounder and advertised using the same media.

Plaintiff has made numerous attempts to reach out to
Annie Chung, the owner of Impex.  Plaintiff has yet to receive
any return calls to settle the matter.  The Amended Complaint
alleges three causes of action including trade dress
infringement, trade dress dilution under the Trademark Dilution
Revision Act ("TDRA") and trade dress dilution under New York
law.  On the first cause of action alleging trade dress
infringement, the Amended Complaint seeks damages in the amount
of $1 million.  On the second and third causes of action
alleging trade dress dilution, the Amended Complaint seeks a
permanent injunction against the resale of the Jump Trainer in
all of Defendant's retail outlets.  The Amended Complaint also
seeks costs, including reasonable attorneys' fees.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12, all
factual allegations in the complaint are accepted as true, and
all inferences are drawn in favor of the pleader.  Mills v.

Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**Defendant's Motion To Dismiss The Amended Complaint's Federal Causes Of Action Is Granted, And Supplemental Jurisdiction Over Plaintiff's State Law Claim Is Declined**

As noted above, the Amended Complaint pleads causes of action for trade dress infringement as well as for trade dress dilution under the TDRA and New York law.  For the reasons described below, the Amended Complaint fails to plead a valid cause of action for either trade dress infringement or TDRA trade dress dilution, and supplemental jurisdiction over Plaintiff's state law claim for trade dress dilution is declined.

## A. The Amended Complaint Fails To State A Valid Cause Of Action For Trade Dress Infringement Under The Lanham Act

Section 43(a) of the Lanham Act provides a private cause of action against

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person [] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

7

15 U.S.C. § 1125(a)(1)(A).  This protection extends to trade dress, see Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 773, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), which encompasses the design and appearance of a product along with all the elements that serve to identify the product to consumers, see Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 31 (2d Cir. 1995).

     "To plead a claim of trade dress infringement involving the appearance of a product, [a plaintiff] must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's." Sherwood 48 Assocs. v. Sony Corp. of Am., 76 Fed. Appx. 389, 391 (2d Cir. 2003) (citing Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115-16 (2d Cir. 2001)).  "A plaintiff must also offer 'a precise expression of the character and scope of the claimed trade dress.'" Id. (quoting Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997)). According to Defendant, Plaintiff fails to state a valid cause of action alleging trade dress infringement because the Amended Complaint has not clearly identified the alleged trade dress, has not pled that the trade dress is non-functional and has not

8

established that the trade dress has acquired a secondary
meaning.

### 1. The Amended Complaint Alleges Sufficient Facts To Establish The Elements Of Plaintiff's Trade Dress

As noted above a "plaintiff must offer 'a precise
expression of the character and scope of the claimed trade
dress.'" Sherwood 48 Assocs, 76 Fed. Appx. at 391 (citing
Landscape Forms, 113 F.3d at 381); see also Nat'l Lighting Co.,
Inc. v. Bridge Metal Indus., LLC, 601 F. Supp. 2d 556, 560-61
(S.D.N.Y. 2009). Plaintiff must articulate the "elements of
their product design with specificity to be afforded trade dress
protection." Shevy Custom Wigs, Inc. v. Aggie Wigs, No. 06 Civ.
1657(JG), 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006).
Although "there is no question that trade dress may protect the
'overall look' of a product" since "each element of a trade
dress individually might not be inherently distinctive . . . the
combination of elements may be indicative of source." Landscape
Forms, 113 F.3d at 381 (internal quotation marks and citations
omitted). However, "focus on the overall look of a product does
not permit a plaintiff to dispense with an articulation of the
specific elements which comprise its distinct dress. Without
such a precise expression of the character and scope of the

claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market.  Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." Id.

Here, the Amended Complaint contains the following passages describing Plaintiff's trade dress:

> The Urban Rebounder is a trampoline type device mainly comprised of a stabilizing bar, a support frame bar, locking pins, a jumping mat, a protective fold skirt surrounding the mat, springs, and legs to support the device (a photo of which is attached herewith, labeled "Exhibit A"). Am. Compl. ¶ 9.
>
> The Urban Rebounder contains a logo with the word mark "Urban Rebounding."  This word mark was registered with the United States Patent and Trademark Office ("USPTO") on February 28, 2006 as Registration # 3062622. Am. Compl. ¶ 13.
>
> A distinguishing feature of the Urban Rebounder sold to DSG after 2008 was the design of the jumping mat in black with a red outline, and a protective fold skirt surrounding the mat that included a logo design which bore Plaintiff's

10

registered Trademark (as depicted in Exhibit "A").  Am. Compl. ¶ 17.

Between 2008 and the present day, ALL Urban Rebounders sold to all customers are currently black with a red outline, and a protective fold skirt surrounding the mat that includes a logo design which bear Plaintiff's registered Trademark.  Am. Compl. ¶ 22.

The distinguishing coloration in the product design of The Urban Rebounder has acquired distinctiveness through secondary meaning, in that the underlying black and red color scheme conveys to the minds of the public that its primary significance is to identify Plaintiff Urban Group, the source of The Urban Rebounder Product.  Am. Compl. ¶ 25.

Through Plaintiff Urban Group's use and advertisement, the Urban Rebounder's overall design with black and red color scheme has become so associated with Berns and Urban Group in the mind of the public that, separately and aside from Plaintiff's registered Trademark, it has famously become a source identifier of the Urban Rebounder distinguishable from other trampling devices.  Am. Compl. ¶ 42.

As such, the Amended Complaint, in describing Plaintiff's trade dress, focuses primarily on three things: (1) the structural elements of the Urban Rebounder; (2) the presence of Plaintiff's trademark; and (3) the black and red color scheme and protective fold skirt.

The Amended Complaint's recitation of the elements of the Urban Rebounder – elements which would appear to be common to any trampoline – are insufficient to establish Plaintiff's trade dress, as "the description of Plaintiff's claimed trade

11

dress is likely overbroad and generic." ID7D Co., Ltd. v. Sears
Holding Corp., No. 3:11cv1054(VLB), 2012 WL 1247329, at *10 (D.
Conn. Apr. 13, 2012) (holding Plaintiff to have failed to
adequately describe its trade dress, as "Plaintiff's claimed
trade dress seeks protection for what appears to be the basic
design or general configuration of a generic portable grill.").
Such a "laundry list of the elements that constitute a []
design" is insufficient to show distinctiveness. Nat'l Lighting
Co., 601 F. Supp. 2d at 562.

However, because the Amended Complaint describes the
Urban Rebounder's black and red color scheme and protective fold
skirt that included Plaintiff's trademarked logo, Plaintiff has
adequately described its trade dress.  To allege a valid cause
of action for trade dress infringement, a plaintiff must specify
"not just which features are distinctive, but also how they are
distinctive." Shevy Custom Wigs, 2006 WL 3335008, at *5.  Here,
the Amended Complaint identifies the jumping mat and the
protective fold skirt, and it describes how these elements are
distinctive, namely the black and red color scheme and the
presence of Plaintiff's trademark on the fold skirt.
Notwithstanding Defendant's contentions that Plaintiff has
failed to allege that its use of these features is unique or

distinctive in the industry, the Amended Complaint expressly states that the black and red color scheme is "distinguishing," Am. Compl. ¶¶ 17, 25, and the Amended Complaint provides the USPTO registration number for the trademark that appears as part of Plaintiff's trade dress.  While color, in certain contexts, cannot qualify as trade dress, see Mana Prods, Inc. v. Columbia Cosmetics Mfg. Inc., 65 F.3d 1063, 1071 (2d Cir. 1995) (noting that the color black "does not act as a symbol and distinguish Mana's compacts from its competitors . . . because there are countless numbers of cosmetic companies that sell black compacts"), the color scheme of the Urban Rebounder's jumping mat is alleged to be unique.  Although Defendant correctly notes that conclusory references to the "entire look of the product" cannot fulfill a plaintiff's obligation to offer "a precise expression of the character and scope of the claimed trade dress," see Nat'l Lighting Co., 601 F. Supp. 2d at 562, the Amended Complaint, via its description of the jumping mat and fold skirt, provides more than conclusory assertions regarding the overall look of the Urban Rebounder.  Accordingly, the Amended Complaint alleges sufficient facts to establish the elements of Plaintiff's trade dress.

### 2. The Amended Complaint Fails To Allege Sufficient Facts To Establish Plaintiff's Trade Dress To Be Non-Functional

Defendant contends that Plaintiff has failed to assert a valid cause of action for trade dress infringement because the Amended Complaint fails to allege that Plaintiff's trade dress is non-functional.  In its opposition to Defendant's motion to dismiss, Plaintiff contends that its Amended Complaint is not deficient with respect to functionality, because the burden is on Defendant to demonstrate functionality in Plaintiff's protectable trade dress.  However, the law is well-settled that a plaintiff alleging infringement or dilution of unregistered trade dress must prove that its alleged trade dress is non-functional.  15 U.S.C. §§ 1125(a)(3) and (c)(4); Yurman Design, 262 F.3d at 116; Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC, No. 11 Civ. 1794, 2011 WL 6600267, at *7 (S.D.N.Y. Dec. 22, 2011).  Although Plaintiff does allege that its trademark is registered, Plaintiff's trade dress, which includes the Urban Rebounder's color scheme and protective fold skirt employing Plaintiff's trademark, is unregistered.  Additionally, the Amended Complaint expressly describes Plaintiff's trade dress as "unregistered."  See Am. Compl. ¶ 44.  Accordingly, Plaintiff's contention that it need not plead any facts establishing that its alleged trade dress is non-functional is in error.

14

The only reference the Amended Complaint has to the non-functioning nature of Plaintiff's trade dress is in paragraph 44:

> In turn, Defendnat DSG has diluted the Urban Rebounder's unregistered, non-functioning and famous overall design and coloration by tarnishment. Because of the Jump Trainer's mirror image to this unregistered trade dress, the Urban Rebounder may be effectively linked to a product of shoddy quality, and may result in consumers associating the Jump Trainer's lack of prestige with the Urban Rebounder.

Am. Compl. ¶ 44. However, conclusory assertions that a product's design is non-functional are insufficient to meet the plaintiff's burden. See DO Denim, LLC v. Fried Denim, Inc., 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (dismissing Plaintiff's trade dress infringement claim, noting, "The Amended Complaint includes a conclusory assertion that the [product] is 'unique and nonfunctional,' but proffers no factual allegations demonstrating that the design is not aesthetically or otherwise functional."). Because the Amended Complaint fails to allege facts establishing Plaintiff's trade dress to be non-functional, Plaintiff has failed to assert a valid cause of action for trade dress infringement. Accordingly, the Amended Complaint's trade dress infringement count is dismissed.

15

### 3. The Amended Complaint Fails To Allege Sufficient Facts To Establish Plaintiff's Trade Dress To Have Acquired A Secondary Meaning

As noted above, in order to assert a claim for trade dress infringement, a plaintiff must establish that his trade dress has acquired a secondary meaning.  See Sherwood 48 Assocs., 76 Fed. Appx. at 391.  According to Defendant, the Amended Complaint fails to establish that Plaintiff's trade dress has acquired a secondary meaning.  "When determining whether a trade dress has secondary meaning, courts consider several factors, including: (1) plaintiff's advertising expenditures; (2) consumer surveys linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the trade dress; and (6) the length and exclusivity of the use."  Heptagon Creations, 2011 WL 6600267, at *8 (citing Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., 25 F. Supp. 2d 154, 164 (S.D.N.Y. 1998)).

Here, the Amended Complaint has alleged facts describing the amount of time Plaintiff has used the alleged trade dress, asserting that all Urban Rebounders sold to customers between 2008 and the present day had the black and red

16

color scheme with the protective fold that included Plaintiff's
trademark.  See Am. Compl. ¶¶ 17, 22.  Additionally, the Amended
Complaint alleges facts concerning the number of Urban Rebounder
units sold, thereby providing some indication as to the
product's sales.  See Am. Compl. ¶¶ 18-21.  Plaintiff also notes
that the Urban Rebounder has been featured on The Today Show,
The View, CNN, Lifetime and Headline News, among other notable
programming.  See Am. Compl. ¶ 10.  However, the Amended
Complaint makes no allegations concerning Plaintiff's
advertising expenditures, consumer surveys, prior attempts to
plagiarize the trade dress or that Plaintiff exclusively uses
the color scheme alleged.  Although the Amended Complaint does
allege that Plaintiff's trade dress case has become associated
with the Urban Rebounder in the eyes of the public, there are no
facts alleged to support this conclusory claim.  See Heptagon
Creations, 2011 WL 6600267, at *8 (plaintiff failed to allege
that its trade dress had acquired distinctiveness because, while
plaintiff alleged that its products had been featured in
magazines, it did not include any allegations relating to
"advertising expenditures or consumer surveys linking the
[alleged trade dress] to a particular source.").

17

Because trade dress claims "raise a potent risk that relief will impermissibly afford a level of protection that would hamper efforts to market competitive goods" and courts "exercise particular caution when extending protection to product designs," a plaintiff claiming trade dress protection for a product design must plead facts which would support a finding that "in the minds of the public, the primary significance [of the trade dress] is to identify the source of the product rather than the product itself (what is known as 'acquired distinctiveness' or 'secondary meaning')." Yurman Design, 262 F.3d at 114-15 (internal quotation marks and citations omitted).  Plaintiff's contention that a significant feature of its trade dress is its use of the colors black and red raises its burden, as "color marks by their very nature are not generally distinctive."  Mana Prods., 65 F.3d at 1070. Because the Amended Complaint fails to allege facts relating to Plaintiff's advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize Plaintiff's trade dress, Plaintiff has failed to adequately allege its trade dress to have acquired a secondary meaning.  Accordingly, the Amended Complaint fails to present sufficient facts to plead a claim for trade dress infringement.

18

Although the Amended Complaint does allege sufficient facts to establish the elements of Plaintiff's trade dress, the Amended Complaint fails to allege that Plaintiff's trade dress is non-functional or that its trade dress has acquired a secondary meaning.  Without these two elements, the Amended Complaint fails to state a claim for trade dress infringement upon which relief can be granted, and Defendant's motion to dismiss the trade dress infringement count is granted.

## B. The Amended Complaint Fails To State A Valid Cause Of Action For Trade Dress Dilution Under The TDRA

The Amended Complaint's second cause of action seeks dilution protection under the TDRA.  A claim for trademark dilution brought under the TDRA requires that a plaintiff show (1) the trade dress is famous, (2) the defendant is using the trade dress in commerce, (3) the defendant's use of the trade dress began after the trade dress became famous and (4) the defendant's use of the trade dress is likely to cause dilution. See Burberry Ltd. v. Euro Moda, Inc., No. 08 Civ. 5781, 2009 WL 1675080, at *10 (S.D.N.Y. June 10, 2009) (citing 15 U.S.C. § 1125(c)).  According to Defendant, the Amended Complaint fails to assert a claim for trade dress dilution under the TDRA

19

because it fails to allege that Plaintiff's trade dress is famous.

The term "famous" for purposes of trade dress dilution is defined by statute:

> For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.  In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>
> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A); Luv N' Care, Ltd. v. Regent Baby Prods. Corp., 841 F. Supp. 2d 753, 756-57 (S.D.N.Y. 2012). "Courts applying those factors have determined that marks such as NIKE and Mattel's HOT WHEELS are famous under the TDRA." Luv N' Care, 841 F. Supp. 2d at 757 (citing Nike, Inc. v. Nikepal Int'l, Inc., No. 2:05-CV-1468-GEB-JFM, 2007 WL 2782030, at *5-6

(E.D. Cal. Sept. 18, 2007) (mark famous because Nike "had spent
in excess of a billion dollars for promotion of NIKE products in
the United States," sales of NIKE products had earned at least
$1 billion per year, "recognition of the success of NIKE has
been recorded by various publications in surveys and articles,"
and "the NIKE mark is registered on the PTO's principal
register") and Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628,
635 (9th Cir. 2008) ("Here, a reasonable trier of fact could
conclude that the HOT WHEELS mark is famous: it has been in use
for over thirty-seven years; 350 million dollars have been
expended in advertising the mark; three billion HOT WHEELS units
have been sold since the inception of the mark; and HOT WHEELS
are sold in all fifty states and throughout the world.")).

In this case, Plaintiff does not plead sufficient
facts to support the assertion that its trade dress is similarly
famous.  Although the Amended Complaint alleges that its
trademark is registered, the Amended Complaint contains no facts
concerning Plaintiff's advertising, the publicity of its trade
dress or any facts beyond conclusory allegations suggesting its
trade dress to be well-recognized by the public.  The Amended
Complaint contends that Plaintiff's trade dress "has famously
become a source identifier of the Urban Rebounder

21

distinguishable from other trampling devices." Am. Compl. ¶ 42. However, the TDRA's inclusion of the phrase "widely recognized by the general consuming public of the United States [] was intended to reject dilution claims based on niche fame, i.e. fame limited to a particular channel or trade, segment of industry or service, or geographic region." Luv N' Care, 841 F. Supp. 2d at 758 (quoting Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 307 n.90 (S.D.N.Y. 2007)).   "One of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." Id. (quoting Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008)).   The Amended Complaint fails to allege that the Urban Rebounder's trade dress is of comparable fame to warrant dilution protection under the TDRA, and Defendant's motion to dismiss the second cause of action is granted.

## C. Supplemental Jurisdiction Over Plaintiff's State Law Claim For Trade Dress Dilution Is Declined

Finally, the Amended Complaint alleges trade dress dilution under New York law.  New York General Business Law § 360-l states that "[l]ikelihood of . . . dilution of the

22

distinctive quality of a mark or trade name shall be a ground

for injunctive relief . . . notwithstanding the absence of

competition between the parties or the absence of confusion as

to the source of goods or services." N.Y. Gen. Bus. Law § 360-

l; Malletier v. Dooney & Bourke, Inc., 561 F. Supp. 2d 368, 381

(S.D.N.Y. 2008). "To prevail on a claim under section 360-l of

the New York General Business Law, first, the plaintiff's

trademark must be distinctive and second, the plaintiff must

show a likelihood of dilution." Malletier, 561 F. Supp. 2d at

381.


"[A] district court 'may decline to exercise

supplemental jurisdiction' if it 'has dismissed all claims over

which it has original jurisdiction.' Kolari v. N.Y.

Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28

U.S.C. § 1367(c)(3)). "[I]n the usual case in which all

federal-law claims are eliminated before trial, the balance of

factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—

will point toward declining to exercise jurisdiction over the

remaining state-law claims." Carnegie-Mellon Univ. v. Cohill,

484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988);

Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d

23

Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."). Because Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim for trade dress dilution under New York General Business Law § 360-l.

## Conclusion

Based on the conclusions set forth above, Defendant's motion to dismiss the two federal causes of action is granted, and supplemental jurisdiction over Plaintiff's state law cause of action is declined. Leave to replead within twenty days is granted.

It is so ordered.

New York, NY
August 2 , 2012

_____
ROBERT W. SWEET
U.S.D.J.

24