UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| URBAN GROUP EXERCISE CONSULTANTS, LTD.<br><br>       Plaintiff,<br><br>   v.<br><br>DICK'S SPORTING GOODS, INC.,<br><br>       Defendant. | Civil Action No. 1:12-CV-3599 (RWS) |

**DICK'S SPORTING GOODS, INC.'S MOTION AND MEMORANDUM OF LAW TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

          Michael A. Nicodema (MAN2949)
          Greenberg Traurig, LLP
          200 Park Avenue
          Florham Park, NJ  07932
          (973) 360-7900

          Jeffrey P. Dunning
          Mark R. Galis
          Elysa Q. Wan
          Greenberg Traurig, LLP
          77 West Wacker Drive, Suite 3100
          Chicago, IL  60601
          (312) 456-8400

          *Attorneys for Defendant Dick's Sporting Goods, Inc.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I | INTRODUCTION | 1 |
| II | FACTUAL BACKGROUND | 2 |
| III | LEGAL STANDARDS | 5 |
| | A. Relevant Pleading Requirements | 5 |
| | B. Trade Dress Infringement | 6 |
| | C. Trade Dress Dilution | 7 |
| IV. | PLAINTIFF'S SAC FAILS TO STATE A CLAIM FOR TRADE DRESS INFRINGEMENT OR DILUTION | 9 |
| | A. The SAC Does Not Allege Facts Sufficient To Find That the Alleged Trade Dress Has Acquired Secondary Meaning | 9 |
| | B. The SAC Does Not Allege Facts Sufficient To Find That the Alleged Trade Dress is Famous | 12 |
| V. | THE DISMISSAL OF PLAINTIFF'S CLAIMS SHOULD BE WITH PREJUDICE | 13 |
| VI. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................................................. 6

*Bell Atl Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007) ................................................................................. 6

*Braun Inc. v. Dynamics Corp. of America*,
   975 F.2d 815 (Fed. Cir. 1992) .................................................................................... 11, 12

*Burberry Ltd. v. Euro Moda, Inc.*,
   No. 08 Civ. 5781, 2009 WL 1675080 (S.D.N.Y. June 10, 2009) ....................................... 8

*Condit v. Dunne*,
   317 F.Supp.2d 344 (S.D.N.Y. 2004) .................................................................................. 9

*Dietrich v. Bauer*,
   76 F.Supp.2d 312 (S.D.N.Y. 1999) .................................................................................. 13

*Ergotron, Inc. v. Hergo Ergonomic Support Systems, Inc.*,
   No. 94 Civ. 273, 1996 WL 143903 (S.D.N.Y. Mar. 29, 1996) ................................... 10, 11

*First Brands Corp. v. Fred Meyer, Inc.*,
   809 F.2d 1378 (9th Cir. 1987) ..................................................................................... 10, 11

*Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*,
   228 F.Supp.2d 399 (S.D.N.Y. 2002) .................................................................................. 8

*Heller Inc. v. Design Within Reach, Inc.*,
   No. 09 Civ. 1909, 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) ..................................... 12

*Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*,
   No. 11 Civ. 1794, 2011 WL 6600267 (S.D.N.Y. Dec. 22, 2011) ....................................... 7

*In re Merrill Lynch Ltd. Partnerships Litigation*,
   7 F.Supp.2d 256 (S.D.N.Y. 1997) ............................................................................... 13, 14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   454 F.3d 108 (2d Cir. 2006) ............................................................................................... 6

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
   841 F.Supp.2d 753 (S.D.N.Y. 2012) ............................................................................. 8, 13

*Mana Prods., Inc. v. Columbia Cosmetics Mfg. Inc.*,
   65 F.3d 1063 (2d Cir. 1995) ............................................................................................... 7

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006) ............................................................................................... 9

*Mead Data Central, Inc. v. Toyota Motor Sales U.S.A., Inc.*,
   875 F.2d 1026 (2d Cir. 1989) ............................................................................................. 8

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) ............................................................................................... 5

*Nat'l Distillers Products Co., LLC v. Refreshment Brands, Inc.*,
   198 F.Supp.2d 474 (S.D.N.Y. 2002) .................................................................................. 8

*Savin Corp. v. Savin Group*,
   391 F.3d 439 (2d Cir. 2004) ............................................................................................... 8

*Sherwood 48 Assocs. v. Sony Corp. of Am.*,
    76 Fed. Appx. 389 (2d Cir. 2003) ................................................................................... 6
*SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*,
    No. 06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) ............................................ 8
*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
    25 F. Supp. 2d 154 (S.D.N.Y. 1998) ......................................................................... 7, 10
*Thompson Med. Co. v. Pfizer, Inc.*,
    753 F.2d 208 (2d Cir. 1985) ....................................................................................... 7
*Villager Pond, Inc. v. Town of Darien*,
    56 F.3d 375 (2d Cir. 1995) ........................................................................................ 5
*Yurman Design Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001) ................................................................................... 6, 14

**Federal Statutes**

15 U.S.C. § 1125(a) ........................................................................................................ 2
15 U.S.C. § 1125(c) ..................................................................................................... 2, 8
15 U.S.C. § 1125(c)(2)(A) ............................................................................................ 8, 13

**State Statutes**

New York Gen. Bus. Law § 360-l ..................................................................................... 2

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1

I.  **INTRODUCTION**

Plaintiff Urban Group Exercise Consultants, Ltd. ("Plaintiff") has now had three opportunities to state a claim against Defendant Dick's Sporting Goods, Inc. ("DSG") for infringement and dilution of Plaintiff's alleged unregistered trade dress, yet Plaintiff's Second Amended Complaint ("SAC", Dkt. No. 25) still fails to allege facts which, if proven, would support each of the necessary elements of its claims. This Court previously dismissed Plaintiff's First Amended Complaint ("FAC", Dkt. No. 6) for failure to state a claim, due to Plaintiff's failure to plead facts sufficient to prove that its alleged trade dress has acquired secondary meaning or fame ("Opinion", Dkt. No. 24).

While the Court granted Plaintiff leave to replead its claims, none of the additional facts alleged by Plaintiff in the SAC would support a finding that its alleged trade dress has acquired secondary meaning or is famous under trademark law. As discussed below, none of the newly-alleged facts shows any efforts by Plaintiff to feature or emphasize its alleged trade dress in any of its advertising or promotional activity, or any evidence of association by third parties of the alleged trade dress with Plaintiff. Moreover, Plaintiff states that it has only used the alleged trade dress since 2008, and thus Plaintiff's allegations regarding sales and promotional activities prior to that date (for products which did not utilize the alleged trade dress) are entirely irrelevant to Plaintiff's claims. Accordingly, Plaintiff's SAC must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.     RELEVANT FACTUAL BACKGROUND

Plaintiff manufactures and distributes the "Urban Rebounder", a trampoline exercise device (SAC ¶¶ 8-9).  Since 2008, Plaintiff has sold a version of the Urban Rebounder which features a red line or stripe outlining the product's black jumping mat (Id. ¶¶ 11, 42).[1]  Plaintiff does not own any trademark registrations covering the design of the Urban Rebounder (see, e.g., SAC ¶ 64.)

This is Plaintiff's third attempt to plead claims against DSG for trade dress infringement and dilution based on DSG's sale of a competing trampoline exercise device, the Fitness Gear Cardio Jump Trainer.  On May 7, 2012, Plaintiff filed its original Complaint alleging that DSG's sale of the accused Jump Trainer product infringes Plaintiff's alleged unregistered trade dress in the Urban Rebounder product under 15 U.S.C. § 1125(a) and dilutes Plaintiff's registered trademark[2] under 15 U.S.C. § 1125(c) and New York Gen. Bus. Law § 360-l (Dkt. No. 1).  Subsequently, on June 21, 2012, Plaintiff filed its FAC, in which it revised its dilution claims to allege that DSG's sale of the Jump Trainer product dilutes Plaintiff's unregistered product configuration trade dress (Dkt. No. 6).

On August 7, 2012 this Court granted DSG's motion to dismiss the FAC for failure to state a claim for federal trade dress infringement and trade dress dilution, and declined to exercise supplemental jurisdiction over Plaintiff's state law claim ("Opinion", Dkt. No. 24).  The Court found that Plaintiff did not plead sufficient facts to meet its burden of establishing that its alleged trade dress (i) is non-functional, (ii) has acquired secondary meaning, or (iii) is famous

---

[1] As discussed further below, prior to 2008 Plaintiff sold a different version of the Urban Rebounder with an altogether different color scheme which featured a yellow stripe and blue fold skirt.

[2] Plaintiff alleges that it is the owner of U.S. Trademark Reg. No. 3,062,622 for the mark URBAN REBOUNDING (SAC ¶ 11), but acknowledges that DSG does not use that trademark on the accused Jump Trainer product (Id. ¶ 50).

(Id.). With regard to the issue of secondary meaning, the Court noted that the FAC did not include any allegations related to "concerning Plaintiff's advertising expenditures, consumer surveys, prior attempts to plagiarize the trade dress or that Plaintiff exclusively uses the color scheme alleged" (Opinion at 17, emphasis added). The Court further found that Plaintiff's allegations "concerning the number of Urban Rebounder units sold" and the fact that "Urban Rebounder has been featured on The Today Show, The View, CNN, Lifetime and Headline News, among other [ ] programming" were insufficient to establish secondary meaning.

Plaintiff filed its SAC with the Court on August 24, 2012, but did not serve DSG with a copy of the SAC until August 27, 2012. The SAC largely rehashes the factual allegations stated in the FAC, with a handful of new allegations. First, the SAC includes a number of new (in whole or in part) allegations relating to the extent of Plaintiff's overall advertising and promotion for its "Urban Rebounder" brand. However, none of those allegations shows or describes any efforts by Plaintiff to emphasize or promote the alleged trade dress in its advertising:

- "Over the last twelve years, Berns has spent millions of dollars annually in advertisement expenses on national cable networks such as Home and Garden Television (HGTV), Oxygen, the Hallmark Channel, Style, and the Game Show Network, as well as broadcast networks such as WRNN, WNBC, and WCBS." (SAC ¶ 20)

- "Typically Berns spends approximately one hundred thousand dollars ($100,000) per month to purchase advertising to *promote the Urban Rebounder*. He allocates roughly six thousand five hundred dollars ($6,500) per thirty minutes of airtime on the abovementioned networks." (SAC ¶ 21, emphasis added)

- "From 2006 through 2008, Berns increased his *global advertising expenditures* to four hundred thousand dollars ($400,000) monthly, amounting to an average of $4.8 million spent annually in this timeframe." (SAC ¶ 22, emphasis added)

- "Since 2008, Berns has spent approximately $2.4 million annually in his global advertising expenses *for the Urban Rebounder*." (SAC ¶ 23, emphasis added)

- "Despite the decrease in annual expenditures, Plaintiff Urban Group has increased its promotional efforts through international tradeshows, such as Club Industry, East Coast Alliance, IDEA® Fitness Conference, American Council on Exercise (ACE), and Aerobics and Fitness Association of America (AFAA) to promote and solicit use of the Urban Rebounder in gyms worldwide."  (SAC ¶ 24)

- "These tradeshow expenses cover necessities such as booth space occupancy, production costs for the Urban Rebounder's tradeshow presentation, as well as costs for special productions presented on televisions located at Plaintiff's tradeshow booths."  (SAC ¶ 25)

- "Berns' fitness programming that advertises and promotes the Urban Rebounder is also translated in six other languages:  Japanese, Hebrew, Italian, Spanish, Thai and French (European French and Quebecois French)."  (SAC ¶ 28)

Second, the SAC alleges facts relating to purported third-party recognition of Plaintiff's "Urban Rebounder" product, in the form of television and print media coverage, product awards, and purported "research studies and consumer surveys."  Again, none of those allegations evidences any association by third parties of the alleged trade dress with Plaintiff:

- "Various nationwide research studies and consumer surveys have used the Urban Rebounder, such as rehabilitation experiments by Dr. Vijay Vad at Cornell Hospital for Special Surgery and a New Mexico study by Dr. Len Kravitz on Low-Impact Exercise Alternatives, which was published in the American College of Sports Medicine and detailed on Berns' website, www.urbanrebounding.com/research.html#."[3]  (SAC ¶ 26)

- "Berns and the Urban Rebounder have been featured in global broadcasts and cable programming, ranging from several notable television networks such as NBC, CNBC, FitTV, QVC, CNN, NY1, Lifetime, Headline News, Home and Garden Television (HGTV) as well as appearances on The Today Show and The View." (SAC ¶ 27)

---

[3] Plaintiff's web page at www.urbanrebounding.com/research.html# includes 13 links to what appear to be summaries of medical research studies – not "consumer surveys" as Plaintiff characterizes them in the SAC.  Copies of that web page and the summaries provided thereon are attached as Exhibit A.  Notably, only *one* of those summaries even identifies Plaintiff's "Urban Rebounder" product by name, and none of them actually shows a picture of the product or describes the alleged trade dress in any way.

- The Urban Rebounder has also been advertised and depicted in such notable publications as Allure, Fit, Home and Garden, Style Magazine, The New York Daily News, US Today, and Upscale Magazine, as depicted at www.urbanrebounding.com/media.html."[4]  (SAC ¶ 29)

- "Absent any solicitation from Berns, Consumer Products named the Urban Rebounder as one of the top 100 U.S. fitness products in 2008, the same year that the red outline stripe surrounding the Urban Rebounder's black jumping mat became its exclusive design."[5]  (SAC ¶ 31)

Third, Plaintiff has once again alleged facts regarding its sales of the "Urban Rebounder" product, including rehashing its prior allegations that it has sold "millions of units worldwide" (SAC ¶¶ 32-33) and that the "Urban Rebounder" is "found in over five thousand (5,000) gyms worldwide" (SAC ¶ 30).  None of those allegations identifies how many of the Urban Rebounder products sold by Plaintiff since 2008 actually feature the alleged trade dress.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Relevant Pleading Requirements

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995).

---

[4] Plaintiff's web page at www.urbanrebounding.com/media.html includes links to ten articles from various publications, including several of the publications listed in ¶ 29 of the SAC.  Copies of the web page and linked articles are attached as Exhibit B.  Notably, none of those articles shows a trampoline device having the alleged trade dress described in the SAC – a "black jumping mat with a red outline stripe and a protective fold skirt surrounding the mat" (SAC ¶ 11).  Indeed, several of those articles show trampolines with a jumping mat that has an entirely different blue and yellow color scheme, which was used by Plaintiff before it adopted its alleged trade dress in 2008.

[5] The Consumer Reports article identifying the "Urban Rebounder" as "one of the top 100 U.S. fitness products" (also shown at Exhibit B) likewise shows a trampoline having a jumping mat with a ***yellow*** stripe and a blue fold skirt – not the alleged trade dress design featuring a red stripe and black fold skirt.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Bell Atl Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

B.   **Trade Dress Infringement**

A product's trade dress is defined as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).  Courts exercise "particular caution" in extending trade dress protection to product designs. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114-15 (2d Cir. 2001) ("[A]lmost invariably, even the most unusual of product designs . . . is intended not to identify the source" of the product, but to "render the product itself more useful or more appealing.") (citations omitted).  As this Court has noted, "trade dress claims raise a potent risk that relief will impermissibly afford a level of protection that would hamper efforts to market competitive goods" (Opinion at 18, citing *Yurman Design*).

To plead a claim of trade dress infringement involving an unregistered product design, a plaintiff must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's trade dress and the defendant's product. *Sherwood 48 Assocs. v. Sony Corp. of Am.,* 76 Fed. Appx. 389, 391 (2d Cir. 2003) (citing *Yurman Design,* 262 F.3d at 115–16).  Demonstrating secondary meaning requires the satisfaction of rigorous evidentiary requirements. *Thompson Med. Co. v.*

*Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985).  It is particularly difficult to show secondary meaning for a color or color combination, since "color marks by their nature are not generally distinctive" (Opinion at 18, citing *Mana Prods., Inc. v. Columbia Cosmetics Mfg. Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995)).[6]

Trade dress has secondary meaning "when a consumer immediately associates the dress of the product with its source." *Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, No. 11 Civ. 1794, 2011 WL 6600267, at *8 (S.D.N.Y. Dec. 22, 2011) (citing *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F.Supp.2d 154, 164 (S.D.N.Y. 1998)).  Courts may consider a number of factors to determine whether a trade dress has acquired secondary meaning, including (1) plaintiff's advertising expenditures; (2) consumer surveys linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the trade dress; and (6) the length and exclusivity of the use.  *Id*.

### C.   Trade Dress Dilution

A plaintiff asserting a trade dress dilution claim must plead facts which would support a finding that (1) the alleged trade dress is famous, (2) the defendant is making use of the trade dress in commerce, (3) the defendant's use of the trade dress began after the trade dress became famous, and (4) the defendant's use of the trade dress is likely to cause dilution.  15 U.S.C. §

---

[6] Plaintiff's own exhibits to the SAC show that the only arguably distinctive element of the alleged trade dress is the red stripe outlining the jumping mat.  Although Plaintiff refers to the Urban Rebounder's "black jumping mat" and "protective fold skirt" as forming part of the alleged trade dress, the SAC demonstrates that those are non-distinctive features which are found in virtually all mini-trampolines on the market.  Exhibit B to the SAC shows "twenty-four (24) different mini-trampolines" offered for sale on the website http://www.trampolinesplus.com, from various manufacturers (SAC ¶ 17).  Each and every one of those 24 mini-trampolines features a black jumping mat and a protective fold skirt (SAC Ex. B).  Because those features are ubiquitous in the mini-trampoline market, there is no basis on which a fact finder could determine that a black jumping mat or a protective fold skirt are protectable elements of the alleged trade dress.  *See Mana Prods.*, 65 F.3d at 1071 (noting that the color black "does not act as a symbol and distinguish Mana's compacts from its competitors . . . because there are countless numbers of cosmetic companies that sell black compacts").

1125(c); *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL 1675080, at *10 (S.D.N.Y. June 10, 2009).

The term "famous" is defined by statute to mean "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The plaintiff's mark must be "truly famous before a court will afford the owner of the mark the vast protections of" federal dilution law. *Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir. 2004). Only marks approaching "household names" may qualify as "famous marks" under federal law. *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 228 F.Supp.2d 399, 412 (S.D.N.Y. 2002). *See also Luv N' Care, Ltd. v. Regent Baby Prods. Corp.,* 841 F.Supp.2d 753, 757 (S.D.N.Y. 2012) (finding that marks such as NIKE and HOT WHEELS are famous under the TDRA); *Nat'l Distillers Products Co., LLC v. Refreshment Brands, Inc.*, 198 F.Supp.2d 474, 486 (S.D.N.Y. 2002) (noting that the FTDA is "only intended to protect truly famous marks, such as DUPONT, BUICK and KODAK").

Further, while New York Gen. Bus. Law § 360-l does not include an express requirement that a plaintiff's mark or trade dress be "famous", courts in this district have concluded that the standards for establishing the distinctiveness required to show dilution under New York law closely resemble the standards for establishing fame under the Lanham Act. *SMJ Group, Inc. v. 417 Lafayette Restaurant LLC,* No. 06 Civ. 1774, 2006 WL 2516519 at *3 (S.D.N.Y. Aug. 30, 2006). A trademark's distinctiveness in a limited commercial area does not endow it with a secondary meaning for the public generally that qualifies it for protection under § 360-l. *Id.* (citing *Mead Data Central, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989)).

## IV. PLAINTIFF'S SAC FAILS TO STATE A CLAIM FOR TRADE DRESS INFRINGEMENT OR DILUTION

The SAC must be dismissed under Fed. R. Civ. P. 12(b)(6) since it does not allege facts sufficient to show that the alleged trade dress has acquired distinctiveness or fame. As discussed below, the additional facts that Plaintiff alleges in the SAC do not correct any of the deficiencies identified in the Court's Opinion with respect to the pleading requirements of secondary meaning and fame. Rather, the facts alleged in the SAC, if proven, would still fail to show that the public associates Plaintiff's alleged trade dress with the source of the Urban Rebounder product rather than the product itself, much less that the alleged trade dress has become famous in the manner of "household names" such as NIKE and HOT WHEELS.

### A. The SAC Does Not Allege Facts Sufficient To Find That the Alleged Trade Dress Has Acquired Secondary Meaning

At the outset, it is worth repeating that the facts alleged in the SAC relating to advertising or promotional activity, third party recognition, or sales of the Urban Rebounder prior to 2008 are entirely irrelevant to the issue before the Court. Plaintiff admits in the SAC that it has used the alleged trade dress only since 2008 (SAC ¶¶ 11, 31). The media articles referenced in the SAC, including the *Consumer Reports* article naming the Urban Rebounder as one of its "100 Top Products" – all of which are dated from 2008 or prior – show a trampoline product having an altogether different blue and yellow color scheme (see Exhibit B).[7] Plaintiff's sales of and efforts to promote a different product which did not utilize the alleged trade dress cannot possibly support a finding that the alleged trade dress has acquired secondary meaning.

---

[7] Because those articles are expressly referenced and relied on by Plaintiff in the SAC, they are deemed to be incorporated by reference in the SAC, and therefore this Court may consider them in ruling on a motion to dismiss under Rule 12(b)(6). *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (for purposes of a Rule 12(b)(6) motion the complaint is deemed to include any documents incorporated in it by reference); *Condit v. Dunne*, 317 F.Supp.2d 344, 357 (S.D.N.Y. 2004) (a court may consider on a Rule 12(b)(6) motion copies of articles submitted by defendant where plaintiff referenced them in the complaint and they were integral to the plaintiff's action).

Similarly, Plaintiff's allegations regarding sales and advertising outside of the United States are irrelevant to the issue of whether the alleged trade dress has acquired secondary meaning or fame in the U.S.

Further, to the extent that the SAC includes allegations relating to sales or promotional activities occurring after 2008, those allegations likewise do not support a finding of secondary meaning. First, Plaintiff has not shown or pled that any of its advertising or promotional materials used since 2008 even show – much less emphasize or promote – the alleged trade dress. The law is clear that advertising and promotional activities only support a finding of secondary meaning if the ads stress or focus on the alleged trade dress itself. *Sports Traveler,* 25 F.Supp.2d at 164 (advertising and promotional efforts did not support a finding of secondary meaning where the plaintiff did not show that the "focus of its promotional activities was on the [alleged] trade dress"); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (extensive advertising and promotional efforts cannot establish secondary meaning where the plaintiff "did not attempt to engender consumer identification with" the alleged trade dress).

In the seminal *First Brands* case,[8] the Ninth Circuit held that although the plaintiff spent millions of dollars in advertising its brand, that fact did not support a finding that the alleged trade dress (the yellow color and shape of an anti-freeze jug) had acquired secondary meaning, since the advertisements at issue did not "stress[] the color and shape of the antifreeze jug." *First Brands*, 809 F.2d at 1383. The court noted that plaintiff's advertising "did not, for example, urge consumers to look for the 'familiar yellow jug'". *Id.*

---

[8] *First Brands* has been cited with approval by courts in this district on numerous occasions. *See, e.g., Sports Traveler,* 25 F.Supp.2d at 164; *Ergotron, Inc. v. Hergo Ergonomic Support Systems, Inc.*, No. 94 Civ. 273, 1996 WL 143903, at *8 (S.D.N.Y. Mar. 29, 1996).

Here, as in the *First Brands* case, while Plaintiff claims to have spent sizable sums on advertising and promotion for the Urban Rebounder product, it fails to allege how any of its advertisements or promotions stressed or emphasized the alleged trade dress. The mere fact that a party may have spent large sums on advertising a product, with nothing more, does not show that the public associates the product's trade dress with the source of the product. *See Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 826-27 (Fed. Cir. 1992) (finding that $5.5 million in advertising expenditures were irrelevant to the issue of secondary meaning since the plaintiff "did not proffer evidence establishing that the advertising effectively created secondary meaning" in the alleged trade dress); *First Brands*, 809 F.2d at 1383 ("[A] large expenditure of money does not in itself create legally protectable rights. The test of secondary meaning is the effectiveness of the efforts to create it").

Similarly here, Plaintiff has not alleged facts which would show how any of its advertising expenditures since 2008 have served to "engender consumer identification" in the alleged trade dress. Plaintiff has not alleged that any of its advertisements directed consumers to "look for the red stripe" in order to distinguish the Urban Rebounder from competing trampoline products. Nor has Plaintiff alleged how any of its advertisements stressed or served to focus consumers' attention on the alleged trade dress.

Further, Plaintiff's advertising expenditures are irrelevant if they were directed to the *functional* aspects of the Urban Rebounder product. "Advertising that promotes the functional advantages of a product and does not call attention to the design alleged to be non-functional provides little if any evidence of secondary meaning." *Ergotron,* 1996 WL 143903, at *8. Again, nothing in the SAC indicates that any of Plaintiff's relevant advertising emphasized any *non-functional* aspects of the Urban Rebounder, such as the alleged trade dress.

In addition, Plaintiff's reference in the SAC to purported "consumer surveys" (SAC ¶ 26) is misleading and likewise fails to evidence that the alleged trade dress has acquired secondary meaning. As discussed *supra*, the purported "consumer surveys" found on Plaintiff's website (incorporated by reference in the SAC, and shown at Exhibit A hereto) are nothing more than medical research studies on the effects of rebounding exercises – not actual consumer surveys showing consumer recognition of the alleged trade dress. Plaintiff has failed to identify any actual consumer surveys showing recognition of the alleged trade dress by consumers, and thus this Court can conclude that no such surveys exist. *See Braun Inc.*, 975 F.2d at 827 (failure to submit survey evidence of secondary meaning supports finding that none exists) (citations omitted).

Finally, while Plaintiff rehashes its prior allegations that it has sold "millions of units" and that the Urban Rebounder is "found in over five thousand (5,000) gyms worldwide", it fails to identify how many of the units which it has sold actually utilize the alleged trade dress – as opposed to the blue and yellow color scheme used by Plaintiffs prior to 2008. Moreover, evidence of even extensive sales is generally insufficient to prove secondary meaning. *See Braun Inc.*, 975 F.2d at 827 (large consumer demand for the plaintiff's product does not permit a finding of secondary meaning, because strong market demand for a product usually indicates product desirability not secondary meaning) (citation omitted).

    **B.    The SAC Does Not Allege Facts Sufficient To Find That the Alleged Trade Dress is Famous**

Since Plaintiff has not alleged facts which would support a finding that the alleged trade dress has acquired secondary meaning, Plaintiff does not even come close to pleading facts which if proven would establish that the alleged trade dress is famous under the TDRA. *See Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909, 2009 WL 2486054, at *4 (S.D.N.Y.

Aug. 14, 2009) (under *Twombly*, a dilution plaintiff must "plead enough facts to show that its dilution claim is facially plausible").

As discussed above and in this Court's prior Opinion, Plaintiff's allegations in the SAC regarding its overall sales, advertising expenses, and third party recognition of its "Urban Rebounder" brand cannot support a finding that the alleged trade dress is "widely recognized by the general consuming public of the United States". 15 U.S.C. § 1125(c)(2)(A). Allegations of extensive overall sales and advertising for a product line are insufficient to support an assertion that the trade dress of those products is famous. *Luv N' Care, Ltd*, 841 F. Supp. 2d at 757. Thus, the SAC falls far short of pleading facts that would prove that Plaintiff's alleged trade dress is truly famous in the vein of marks like NIKE and HOT WHEELS. *Id*. Even assuming that the facts pled in the SAC would support a finding that the alleged trade dress enjoys "niche fame" in the fitness and health club field, the TDRA does not permit dilution claims based on fame in a niche market (Opinion at p. 22, citing *id.* at 758).

In addition, Plaintiff still has failed to satisfy the separate pleading requirement that the alleged trade dress have acquired fame ***before*** DSG began selling the accused Jump Trainer product. This is not surprising given the fact that according to its own pleading Plaintiff has only used the alleged trade dress since 2008 – only two years before it alleges that DSG began selling the accused Jump Trainer product (SAC ¶ 47). This deficiency constitutes yet another basis for dismissal of Plaintiff's dilution claims.

## V.   THE DISMISSAL OF PLAINTIFF'S CLAIMS SHOULD BE WITH PREJUDICE

Where a plaintiff is on notice of deficiencies in a pleading and has had the opportunity to cure them by a first amendment, dismissal with prejudice is proper when a complaint previously has been amended. *Dietrich v. Bauer*, 76 F.Supp.2d 312, 351 (S.D.N.Y. 1999). *See also In re Merrill Lynch Ltd. Partnerships Litigation*, 7 F.Supp.2d 256, 276 (S.D.N.Y. 1997) (a court may

deny a plaintiff leave to replead when that party "has been given ample prior opportunity to allege a claim"). This Court expressly notified Plaintiff in the Opinion that in order to state a valid claim for trade dress infringement, it must plead facts which would support a finding that "in the minds of the public, the primary significance [of the trade dress] is to identify the source of the product rather than the product itself" (Opinion at 18, citing *Yurman Design*, 262 F.3d at 114-15). Despite having been granted another opportunity, Plaintiff has failed to do so. The Court need not and should not grant Plaintiffs a third bite at the apple. *See In re Merrill Lynch*, 7 F.Supp.2d at 276 ("[P]leading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges.").

## VI.  CONCLUSION

For the reasons set forth above, DSG respectfully requests that this Court dismiss Plaintiff's Second Amended Complaint in its entirety, **with prejudice**, pursuant to Fed. R. Civ. P. 12(b)(6).

                                                Respectfully submitted,

Dated:  September 13, 2012        */s/ Jeffrey P. Dunning*
                                            Michael A. Nicodema (MAN2949)
                                            Greenberg Traurig, LLP
                                            200 Park Avenue
                                            Florham Park, NJ  07932
                                            (973) 360-7900

                                            Jeffrey P. Dunning (admitted *pro hac vice*)
                                            Mark R. Galis (admitted *pro hac vice*)
                                            Elysa Q. Wan (admitted *pro hac vice*)
                                            Greenberg Traurig, LLP
                                            77 West Wacker Drive, Suite 3100
                                            Chicago, IL  60601
                                            (312) 456-8400

                                            *Attorneys for Defendant Dick's Sporting Goods, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the foregoing DICK'S SPORTING GOODS, INC.'S MOTION AND MEMORANDUM OF LAW TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: September 13, 2012             */s/ Jeffrey P. Dunning*