UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

URBAN GROUP EXERCISE CONSULTANTS,
LTD.,

               Plaintiff,             12 Civ. 3599

   -against-                    OPINION

DICK'S SPORTING GOODS, INC.,

               Defendant.

-----------------------------------X

A P P E A R A N C E S:

      Attorneys for Plaintiff

      JACOBSON & COLFIN, P.C.
      60 Madison Avenue, Suite 1026
      New York, NY  10010
      By:  Bruce E. Colfin, Esq.

      Attorneys for Defendant

      GREENBERG TRAURIG, LLP
      200 Park Avenue
      Florham Park, NJ  07932
      By:  Michael A. Nicodema, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3 8 13

**Sweet, D.J.**

Defendant Dick's Sporting Goods, Inc. ("DSG" or the "Defendant") has moved under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") to dismiss the Second Amended Complaint ("SAC") of plaintiff Urban Group Exercise Consultants, Ltd. ("UGEC" or the "Plaintiff"). Based upon the conclusions set forth below, the motion is granted and the SAC is dismissed with prejudice.

**Prior Proceedings**[1]

On May 7, 2012, plaintiff UGEC filed a complaint alleging that defendant DSG's sale of an exercise trampoline called the "Jump Trainer" (i) infringed upon the unregistered trade dress used by UGEC in its own exercise trampoline product called the "Urban Rebounder" in violation Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (ii) diluted UGEC's registered trademark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and New York's anti-dilution statute, N.Y. Gen. Bus. Law § 360-l. Plaintiff subsequently filed an

---

[1] The facts underlying this action are set forth in Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc., No. 12 Civ. 3599 (RWS), 2012 WL 3240442, (S.D.N.Y. Aug. 7, 2012) (the "August 7 Opinion"), familiarity with which is assumed.

1

amended complaint on June 21, 2012 ("FAC"), asserting the same causes of action as the initial complaint.  See Dkt. No. 6.

DSG moved to dismiss the FAC, and the August 7 Opinion granted DSG's motion to dismiss the FAC for failure to state a claim for federal trade dress infringement and trade dress dilution, and declined to exercise supplemental jurisdiction over the state law dilution claim.  The August 7 Opinion granted UGEC leave to replead its claims a third time.

UGEC filed the SAC on August 24, 2012.  The SAC asserted the same causes of action as the previous two complaints, and contained the following allegations:

- "Over the last twelve years, Berns [UGEC's chairman and CEO] has spent millions of dollars annually in advertisement expenses on national cable networks such as Home and Garden Television (HGTV), Oxygen, the Hallmark Channel, Style, and the Game Show Network, as well as broadcast networks such as WRNN, WNBC, and WCBS." SAC ¶ 20.

- "Typically Berns spends approximately one hundred thousand dollars ($100,000) per month to purchase advertising to promote the Urban Rebounder. He allocates roughly six thousand five hundred dollars ($6,500) per thirty minutes of airtime on the abovementioned networks." Id. ¶ 21.

- "From 2006 through 2008, Berns increased his global advertising expenditures to four hundred thousand dollars ($400,000) monthly, amounting to

an average of $4.8 million spent annually in this timeframe." Id. ¶ 22.

- "Since 2008, Berns has spent approximately $2.4 million annually in his global advertising expenses for the Urban Rebounder." Id. ¶ 23.

- "Despite the decrease in annual expenditures, Plaintiff Urban Group has increased its promotional efforts through international tradeshows, such as Club Industry, East Coast Alliance, IDEA® Fitness Conference, American Council on Exercise (ACE), and Aerobics and Fitness Association of America (AFAA) to promote and solicit use of the Urban Rebounder in gyms worldwide.  These tradeshow expenses cover necessities such as booth space occupancy, production costs for the Urban Rebounder's tradeshow presentation, as well as costs for special productions presented on televisions located at Plaintiff's tradeshow booths."  Id. ¶¶ 24-25.

- "Berns' fitness programming that advertises and promotes the Urban Rebounder is also translated in six other languages: Japanese, Hebrew, Italian, Spanish, Thai and French (European French and Quebecois French)."  Id. ¶ 28.

- "Various nationwide research studies and consumer surveys have used the Urban Rebounder, such as rehabilitation experiments by Dr. Vijay Vad at Cornell Hospital for Special Surgery and a New Mexico study by Dr. Len Kravitz on Low-Impact Exercise Alternatives, which was published in the American College of Sports Medicine and detailed on Berns' website, www.urbanrebounding.com/research.html#."[2]  Id. ¶ 26.

---

[2] It bears noting that while Plaintiff's website contains 13 links to what appear to be summaries of medical research studies, only one of those summaries identifies the "Urban Rebounder" product by name, and none show a picture of the product or describe the alleged trade dress in any way.

- "Berns and the Urban Rebounder have been featured in global broadcasts and cable programming, ranging from several notable television networks such as NBC, CNBC, FitTV, QVC, CNN, NY1, Lifetime, Headline News, Home and Garden Television (HGTV) as well as appearances on The Today Show and The View." Id. ¶ 27.

- The Urban Rebounder has also been advertised and depicted in such notable publications as Allure, Fit, Home and Garden, Style Magazine, The New York Daily News, US Today, and Upscale Magazine, as depicted at www.urbanrebounding.com/media.html." Id. ¶ 29.

- "Absent any solicitation from Berns, Consumer Products named the Urban Rebounder as one of the top 100 U.S. fitness products in 2008, the same year that the red outline stripe surrounding the Urban Rebounder's black jumping mat became its exclusive design." Id. ¶ 31.

The SAC has also alleged that UGEC has sold "millions of [Urban Rebounder] units worldwide," id. ¶¶ 32-33, and that the Urban Rebounder is "found in over five thousand (5,000) gyms worldwide." Id. ¶ 30.

The instant motion was heard and marked fully submitted on October 17, 2012.

4

**Applicable Standards**

The standard for a motion to dismiss pursuant to Rule 12(b)(6) was set forth in the August 7 Opinion, familiarity with which is assumed, and is applicable to the instant motion.

**The Allegations in the SAC Fail to Establish a Cause of Action for Federal Trade Dress Infringement**

For purposes of the Lanham Act, a product's trade dress is defined as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006) (quoting Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162, 168 (2d Cir. 1991)). Courts exercise "particular caution" in extending trade dress protection to product designs. Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 114-15 (2d Cir. 2001). "[A]lmost invariably, even the most unusual of product designs . . . is intended not to identify the source of the product, but to render the product itself more useful or more appealing." Id. at 115 (quoting Wal-Mart Stores v. Samara Bros., 529 U.S. 205, 213 (2000)) (quotation marks omitted). As explained in the August 7 Opinion, "trade dress claims raise a potent risk that

relief will impermissibly afford a level of protection that
would hamper efforts to market competitive goods . . . ."
August 7 Opinion at *7 (quoting Yurman Design, 262 F.3d at 114-
15).

        To plead a claim of trade dress infringement premised
upon an unregistered product design (such as UGEC's design of
the Urban Rebounder), a plaintiff must allege that "(1) the
claimed trade dress is non-functional; (2) the claimed trade
dress has secondary meaning; and (3) there is a likelihood of
confusion between the plaintiff's good and the defendant's."
Sherwood 48 Assocs. v. Sony Corp. of Am., 76 Fed. Appx. 389, 391
(2d Cir. 2003) (citing Yurman Design, 262 F.3d at 115-16).

        Trade dress is considered to have attained a secondary
meaning "when a consumer immediately associates the dress of the
product with its source." Sports Traveler, Inc. v. Advance
Magazine Publishers, Inc., 25 F. Supp. 2d 154, 164 (S.D.N.Y.
1998). Courts may consider a number of factors to determine
whether a trade dress has acquired secondary meaning, including:
(i) plaintiff's advertising expenditures; (ii) consumer surveys
linking the trade dress to a particular source; (iii) sales
success; (iv) unsolicited media coverage; (v) attempts to
plagiarize the trade dress; and (vi) the length and exclusivity

6

of the use.  Id.  It is particularly difficult to show secondary meaning for a color or color combination, since "color marks by their very nature are not generally distinctive."  Mana Prods., Inc. v. Columbia Cosmetics Mfg. Inc., 65 F.3d 1063, 1070 (2d Cir. 1995).  As set forth below, the SAC does not contain allegations sufficient to plead the existence of secondary meaning for the alleged trade dress, so UGEC's infringement claim fails.

*(i)  Advertising Expenditures*

As a threshold matter, the facts alleged in the SAC relating to advertising or promotional activity prior to 2008 are irrelevant, because the alleged trade dress has been used on the Urban Rebounder only since 2008.  SAC ¶¶ 11.  Thus, the SAC's allegation that "[o]ver the last twelve years, Berns has spent millions of dollars annually in advertisement expenses on national cable networks . . . [and] broadcast networks," SAC ¶ 20, is irrelevant to the extent that it speaks about pre-2008 expenditures.  The same is true for the allegation that "[f]rom 2006 to 2008, Berns increased his global advertising expenditures to four hundred thousand dollars ($400,000) monthly, amounting to an average of $4.8 million spent annually in this timeframe."  SAC ¶ 22.

7

While the allegation that "[s]ince 2008, Berns has spent approximately $2.4 million annually in his global advertising expenses for the Urban Rebounder," SAC ¶ 23, does address the period of time relevant to this action, that allegation is not supportive of a finding of secondary meaning, because there is no contention that any of those advertisements or promotions stressed or emphasized the alleged trade dress. See Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 826-27 (Fed. Cir. 1992) (citing Am. Footwear Corp. v. Gen. Footwear Co., 609 F.2d 655, 663 (2d Cir. 1979)) (finding that $5.5 million in advertising expenditures were irrelevant to the issue of secondary meaning since the plaintiff "did not proffer evidence establishing that the advertising effectively created secondary meaning" in the alleged trade dress); First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1383 (9th Cir. 1987) (quoting Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 800 (9th Cir. 1970)) ("[A] large expenditure of money does not in itself create legally protectable rights. The test of secondary meaning is the effectiveness of the efforts to create it.") (internal quotation marks and citation omitted).

In addition, advertising expenditures directed to the functional aspects of the Urban Rebounder product does not

8

provide cogent evidence of secondary meaning.  "Advertising that
promotes the functional advantages of a product and does not
call attention to the design alleged to be non-functional
provides little if any evidence of secondary meaning." Ergotron,
Inc. v. Hergo Ergonomic Support Sys., Inc., No. 94 Civ. 2732,
1996 WL 143903, at *8 (S.D.N.Y. Mar. 29, 1996).  Here, there is
no allegation that the referenced advertising and promotional
materials emphasized any non-functional aspects of the Urban
Rebounder, such as the alleged trade dress.

        In opposition to the instant motion, UGEC identified
one example of "advertising" which it claims serves to "focus
the viewers on the red stripe . . . to serve as a source
identifier for JB Berns, the creator of Plaintiff's brand"—a
"promotional video" found on Berns' personal website.
Plaintiff's Opposition and Memorandum of Law In Opposition to
Defendant's Motion to Dismiss the Second Amended Complaint Under
Fed. R. Civ. P. 12(b)(6) ("Pl. Mem. Opp.") at 8.  However, this
single promotional video is insufficient to establish secondary
meaning for the alleged trade dress.  First, the video is posted
on Berns' personal website rather than the Urban Rebounder
website.  Second, the video is not a promotion or advertisement
focused on the Urban Rebounder, but rather promotes Berns
himself, as well as his numerous fitness-related products (of

9

which the Urban Rebounder is only one example).  Third, the SAC
has not alleged that the video has ever been disseminated or
publicized beyond Berns' personal website, nor has the SAC
identified how many consumers have ever viewed the video.
Finally—and most significantly—the video does not mention,
emphasize or call attention to the Urban Rebounder's alleged
trade dress.

*(ii) Consumer Surveys*

Consumer surveys that demonstrate consumer recognition
of the alleged trade dress are highly relevant to the secondary
meaning analysis.  See, e.g., Jeffrey Milstein, Inc. v. Greger,
Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995)).  The SAC has
referred to purported "consumer surveys" that are posted to
UGEC's website, SAC ¶ 26; however, these documents are not
actually consumer surveys, but rather medical research studies
focused solely on the salutary effects of rebounding exercises.
Such studies, which make no mention whatsoever of the Urban
Rebounder's alleged trade dress, do not support a finding of
secondary meaning.

10

*(iii) Sales Success*

The SAC has alleged that UGEC has sold "millions of units," SAC ¶ 33, and that the Urban Rebounder is "found in over five thousand (5,000) gyms worldwide," id. ¶ 30, but has not identified how many of the units sold actually bear the alleged trade dress, as opposed to the blue and yellow color scheme found on Urban Rebound models produced prior to 2008, see id. ¶ 11. While UGEC has submitted an affidavit from Berns which identifies the total number of Urban Rebounder units bearing the alleged trade dress sold by Plaintiff since 2008, as well as the revenues derived from such sales, see Affidavit of Jeffrey Berns in Opposition to Defendant's Motion to Dismiss the Second Amended Complaint ("Berns Affidavit"), the contents of the Berns Affidavit may not be considered in ruling on the instant motion, as a plaintiff may not supplement a deficient pleading through additional facts contained in affidavits.[3]  See Goodman v. Port

---

[3]  Moreover, even if, *arguendo*, the allegations in the Berns Affidavit were fit for consideration on the instant motion, they would still not provide a sufficient basis for a finding of secondary meaning.  Substantial sales of a product, if (as here) unaccompanied by a concomitant effort on the seller's part to associate the product's trade dress with the source of the product rather than the product itself, do not establish that a product's trade dress has acquired secondary meaning.  See Braun, 975 F.2d at 827 (large consumer demand for the plaintiff's product does not permit a finding of secondary

Authority of N.Y. and N.J., 850 F. Supp. 2d 363, 380 (S.D.N.Y.
2012) ("memoranda and supporting affidavits in opposition to a
motion to dismiss cannot be used to cure a defective complaint")
(citations omitted).

*(iv) Unsolicited Media Coverage*

        The SAC has alleged that the Urban Rebounder has been
featured in television broadcasts "on several notable television
networks . . . ." FAC ¶ 27.  However, the SAC does not state
whether these broadcasts occurred before or after the red-stripe
trade dress was adopted in 2008.  Since the broadcasts may have
occurred prior to the adoption of the red-stripe trade dress,
this allegation does not support a finding of secondary meaning.

        The SAC has also alleged that the Urban Rebounder has
been "advertised and depicted in [various] notable publications
. . . ." FAC ¶ 29.  However, nine of the ten media articles
referenced in the SAC are dated 2005 and earlier, see Dick's
Sporting Goods, Inc.'s Motion and Memorandum of Law to Dismiss
Plaintiff's Second Amended Complaint Under Fed. R. Civ. P.

---

meaning, because strong market demand for a product usually
indicates product desirability not secondary meaning) (citation
omitted).

12(b)(6) ("Def's Mem."), Ex. B, so these articles—which could
not have possibly focused on the red-stripe trade dress
instituted in 2008—are completely inapposite to the secondary
meaning analysis.[4]  Cf. Sports Traveler, 25 F. Supp. 2d at 164
(advertising and promotional efforts did not support a finding
of secondary meaning where the plaintiff did not show that the
"focus of its promotional activities was on the [alleged] trade
dress"); First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378,
1383 (9th Cir. 1987) (extensive advertising and promotional
efforts cannot establish secondary meaning where the plaintiff
"did not attempt to engender consumer identification with" the
alleged trade dress).

    The sole article referenced in the SAC that does not
predate the alleged trade dress—a Consumer Reports article from
November 2008 naming the Urban Rebounder as one of its "100 Top
Products"—is likewise not evidence of secondary meaning because
it shows a trampoline product bearing a blue and yellow color
scheme.  See Def's Mem., Ex. B.

---

[4] These articles are expressly referenced in the SAC, see SAC ¶
29, so their content may be considered on the instant motion
even though the articles themselves were not attached to the
SAC.  See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d
Cir. 2006) (for purposes of a Rule 12(b)(6) motion the complaint
is deemed to include any documents incorporated in it by
reference).

*(v)  Attempts to Plagiarize the Trade Dress*

The SAC has not alleged any competitive product
(other than DSG's Jump Trainer product) which has a jumping mat
bearing a red stripe.  Furthermore, of the 24 mini-trampolines
shown for sale on a retail website referenced in the SAC, the
Urban Rebounder is the only one which features a red stripe on
the jumping mat.  <u>See</u> SAC ¶ 17.  Accordingly, this factor
militates against a finding of secondary meaning.  <u>See</u> <u>Ergotron</u>,
1996 WL 143903, at *9.

*(vi) Length and Exclusivity of Use*

The SAC has alleged that the alleged trade dress began
to appear on the Urban Rebounder only in 2008, so at most it has
been utilized for a period of five years.  While secondary
meaning has been found when the continuous trade dress usage
occurred over a five-year period, <u>see</u> <u>Landscape Forms, Inc. v.</u>
<u>Columbia Cascade Co.</u>, 117 F. Supp. 2d 360, 366-67 (S.D.N.Y.
2000), that finding was based not only upon the length of usage,
but also the presence of other significant supporting factors
such as advertising highlighting the trade dress at issue.  <u>See</u>
<u>id.</u>  Here, the other factors in the secondary meaning analysis
militate against a finding of secondary meaning, <u>see</u> <u>supra</u>, so

14

the mere fact that the alleged trade dress has been in
continuous use for five years is not sufficient to outweigh the
factors militating against a finding of secondary meaning.


**The Allegations in the SAC Fail to Establish a Cause of Action
for Federal Trade Dress Dilution**


To state a claim against DSG for trademark dilution
under federal law, UGEC must allege that (1) the alleged trade
dress is famous, (2) DSG is making use of the trade dress in
commerce, (3) DSG's use of the trade dress began after the trade
dress became famous, and (4) DSG's use of the trade dress is
likely to cause dilution.  15 U.S.C. § 1125(c); Burberry Ltd. v.
Euro Moda, Inc., No. 08 Civ. 5781, 2009 WL 1675080, at *10
(S.D.N.Y. June 10, 2009).


The term "famous" is defined by statute to mean
"widely recognized by the general consuming public of the United
States as a designation of source of the goods or services of
the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  The plaintiff's
mark must be "truly famous before a court will afford the owner
of the mark the vast protections of" federal anti-dilution law.
Savin Corp. v. Savin Group, 391 F.3d 439, 449 (2d Cir. 2004).
Only marks that enjoy such broad renown so as to at least

15

approach (if not attain) the status "household names" may qualify as famous marks under federal law.  Friesland Brands, B.V. v. Vietnam Nat'l Milk Co., 228 F. Supp. 2d 399, 412 (S.D.N.Y. 2002); see also Luv N' Care, Ltd. v. Regent Baby Prods. Corp., 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (finding that marks such as NIKE and HOT WHEELS are sufficiently famous to support a federal trademark dilution claim); Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc., 198 F. Supp. 2d 474, 486 (S.D.N.Y. 2002) (noting that the Lanham Act's prohibition against trademark dilution is "only intended to protect truly famous marks, such as DUPONT, BUICK and KODAK").

As set forth above and in the August 7 Opinion, see August 7 Opinion, at *8, UGEC's allegations in the SAC regarding its overall sales, advertising expenses, and third party recognition of its "Urban Rebounder" brand cannot support a finding that the alleged trade dress is "widely recognized by the general consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A).  First, allegations of extensive overall sales and advertising for a product line are insufficient to unilaterally support an assertion that the trade dress of those products has achieved the widespread renown necessary to establish fame.  Luv N' Care, Ltd., 841 F. Supp. 2d at 757; SMJ Group, 2006 WL 2516519, at *4.

16

Moreover, to the extent that UGEC's allegations refer to sales, advertising expenditures, or product usage in countries other than the United States, see SAC ¶¶ 22-23 (noting the amount of Berns' global advertising expenditures); 30 (noting that Urban Rebounder is licensed for use in over 5,000 gyms "worldwide"); 32 (noting that the Urban Rebounder retails in 17 countries other than the U.S.); 33 (noting that the Urban Rebounder "has sold millions of units worldwide"), these allegations are irrelevant to the fame analysis, because the term "famous" is defined by statute to mean "widely recognized by the general consuming public *of the United States* as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A) (emphasis added).

Further, the allegation that the Urban Rebounder is "licensed for use and found in over five thousand (5,000) gyms worldwide," SAC ¶ 30, fails to specify if those products bear the alleged red-stripe trade dress (as opposed to the previous blue and yellow color scheme).  However, even if this allegation is understood to mean that several hundred thousand gym-goers in the United States have used an Urban Rebounder trampoline bearing the alleged trade dress, this allegation is still insufficient to establish that the alleged trade dress is

17

"widely recognized by the general consuming public of the United States," 15 U.S.C. § 1125(c)(2)(A), a group that numbers well over 200 million people.[5]

Since the SAC has not alleged facts sufficient to establish a "sufficient level of public recognition" in order to give rise to a federal dilution claim, see SMJ Group, 2006 WL 2516519, at *4, and since the SAC does not contain the required allegation that the alleged trade dress acquired fame before DSG began selling the accused Jump Trainer product, see Burberry, 2009 WL 1675080, at *10, the federal dilution claim will be dismissed.

**Supplemental Jurisdiction Over the State Law Dilution Claim is Declined**

For the reasons stated in the August 7 Opinion, see August 7 Opinion, at *9, supplemental jurisdiction over UGEC's state law dilution claim is declined.

---

[5] See Consumer Expenditures—2011, Bureau of Labor Statistics, September 25, 2012, http://www.bls.gov/news.release/cesan.nr0.htm.

18

**Conclusion**

"[W]here a plaintiff is on notice of deficiencies in an initial pleading and has had the opportunity to cure them by a first amendment, dismissal with prejudice is proper when a complaint previously has been amended." Dietrich v. Bauer, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999) (quoting J.S. Serv. Ctr. Corp. v. Gen. Elec. Tech. Servs. Co., 937 F. Supp. 216, 225 (S.D.N.Y. 1996) (quotation marks omitted)).

Accordingly, and upon the conclusions set forth above, the motion of DSG is granted and the SAC is dismissed with prejudice, with costs granted to the Defendant.

**New York, NY**
**March  8  , 2013**

ROBERT W. SWEET
U.S.D.J.

19